Delzer v. United Bank of Bismarck, 1997 ND 3, 559 N.W.2d 531|N.D. Supreme Court|
Delzer v. United Bank of Bismarck, 1997 ND 3, 559 N.W.2d 531
[Go to Documents]
Filed Jan. 16, 1997
IN THE SUPREME COURT
STATE OF NORTH DAKOTA
1997 ND 3
Ray Delzer and Betty Jean Delzer, Plaintiffs and Appellants
v.
United Bank of Bismarck, Defendant and Appellee
Civil No. 960093
Appeal from the District Court for Burleigh County, South Central Judicial District, the Honorable Thomas J. Schneider, Judge.
REVERSED AND REMANDED.
Opinion of the Court by Meschke, Justice. Sonna M. Anderson (argued), of Anderson & Anderson, P.O. Box 2574, Bismarck, ND 58502-2574, for plaintiffs and appellants. Appearance by Harold L. Anderson. Patrick W. Durick (argued), of Pearce & Durick, P.O. Box 400, Bismarck, ND 58502-0400, for defendant and appellee.
Delzer v. United Bank
Civil No. 960093
Meschke, Justice. [¶1] Ray Delzer and Betty Jean Delzer appeal a dismissal of their long-running action against United Bank for deceit and breach of a contract to loan money. We reverse and remand for entry of judgment for Delzers on the jury verdict for compensatory damages and for exemplary damages as reduced by the trial court.
[¶2] Delzers ranched near Bismarck. In 1979, Delzers and United Bank entered into a loan agreement for Delzers to pledge all of their assets and their son's equipment as collateral for repayment of money to be loaned by United Bank. Delzers contend United Bank orally agreed to lend them $300,000--an operating loan of $150,000, to be followed by additional loans totaling $150,000 for the purchase of cattle. Delzers executed a promissory note for $150,000, and the Bank advanced that amount. The Bank never advanced any funds to purchase cattle. As a result, Delzers contend, they were unable to pay their debts, they lost their ranch when the holder of the first mortgage foreclosed, and they lost all of the other assets pledged as security for the United Bank loan.
[¶3] Delzers sued United Bank on May 24, 1985. In Delzer v. United Bank, 459 N.W.2d 752 (N.D. 1990) (Delzer I), we reversed a summary judgment of dismissal and remanded for trial. In Delzer v. United Bank, 484 N.W.2d 502 (N.D. 1992) (Delzer II), we again reversed a summary judgment dismissing Delzer's action against United Bank.
[¶4] After the remand in Delzer II, the trial court bifurcated liability and damages. After a trial on liability, the jury returned a verdict finding that (1) United Bank did not make a binding oral contract to lend $150,000 to Delzers for the purchase of cattle as part of an agreement to loan a total of $300,000, and (2) United Bank knowingly deceived Delzers into giving all their property as security for a $300,000 loan when the Bank knew it was only going to loan them $150,000. The trial court ruled the jury's findings were inconsistent, granted United Bank's motion for judgment notwithstanding the verdict on Delzers' deceit claim, and conditionally granted a new trial on that claim if the judgment notwithstanding was reversed on appeal. In Delzer v. United Bank, 527 N.W.2d 650 (N.D. 1995) (Delzer III), we reversed the judgment notwithstanding on the deceit claim, affirmed the grant of a new trial, and remanded for a new trial on both the contract and the deceit claims. This opinion on Delzers' appeal from the outcome of that new jury trial on remand makes our fourth opinion written in this protracted litigation.(1)
[¶5] After the remand in Delzer III, the case was again tried to a jury. The jury verdict found that (1) United Bank breached an "oral contract to lend $150,000 to [Delzers] for the purchase of cattle as part of an agreement to loan the total sum of $300,000;" and (2) "United Bank willfully deceived the Delzers by promising the Delzers $150,000 for cattle when United Bank had no intention of lending Delzers an additional $150,000 to purchase cattle."(2) The jury awarded no damages for United Bank's breach of contract, awarded damages of $538,000 for its deceit, and awarded exemplary damages of $3,000,000.
[¶6] United Bank moved for judgment as a matter of law on the deceit claim or, alternatively, for a new trial. The trial court held that United Bank (1) "shall be granted a judgment as a matter of law and [Delzers'] deceit and punitive damages claims shall be dismissed;" (2) "Alternatively, United Bank should be granted a new trial on all issues;" and (3) "Alternatively, the Court will reduce the exemplary damage award so it does not exceed two times the amount of compensatory damages." The court entered a judgment of dismissal, and Delzers appealed.
I.
[¶7] The trial court relied on Pioneer Fuels, Inc. v. Montana-Dakota Utils. Co., 474 N.W.2d 706 (N.D. 1991), and on Delzer III to grant United Bank judgment as a matter of law on Delzer's deceit and punitive damage claims, explaining:
The underlying evidence presented by the [Delzers] to show breach of contract and deceit is the same alleged promise to lend money for cattle. Under Pioneer Fuelsand Delzer III, a deceit claim falls as a matter of law when the jury finds both breach of contract and deceit on the same evidence. [United Bank] shall be granted a judgment as a matter of law and [Delzers'] deceit and punitive damages claims shall be dismissed.
[¶8] We addressed punitive damages and tort arising out of a breach of contract in Pioneer Fuels, 474 N.W.2d at 709-10 (citations omitted):
Exemplary damages are not ordinarily recoverable in actions arising out of a breach of contract. Exemplary damages may be recoverable if the breach of contract is or is accompanied by an independent willful tort. Tortious conduct must exist independently of the breach of contract and there must be proof of actual damages resulting from the independent tort.
We affirmed a judgment as a matter of law because "Pioneer did not show that MDU committed an independent tort, separate and distinct from its breach of contract." Id. at 710. We also pointed out that a mere breach of contract, without more, will not support liability in tort. Id. at 710. As we explained in Delzer III, 527 N.W.2d at 654: "Pioneer Fuels stands for the principle that, where there is a breach of contract, there must be some additional, independent facts not connected to the manner of the breach of contract to support tort and exemplary damage claims."
[¶9] When someone fraudulently induces another to enter into a contract by making a promise with no intention of performing it, that conduct is actionable fraud. Las Palmas Assoc. v. Las Palmas Center Assocs., 1 Cal.Rptr.2d 301, 310 (Cal. App. 1991). The law recognizes that fraud has such an adverse effect on commercial transactions that punitive damages "may be awarded where a defendant fraudulently induces the plaintiff to enter into a contract." Id. at 311. As Foster v. Dwire, 199 N.W. 1017, 1021 (N.D. 1924), explained, "[t] he real gist of the fraud in such a case is not the breach of the agreement to perform, but the fraudulent intent of the promisor and the false representation of an existing intention to perform, where such intent is in fact nonexistent."
[¶10] Delzers' contract claim is, essentially, based upon the following elements: (1) When United Bank made Delzers a $150,000 operating loan, the Bank also promised to loan them an additional $150,000 for the purchase of cattle; (2) in reliance on that promise, Delzers pledged all of their assets and their son's equipment as collateral; (3) United Bank breached the contract by failing to loan the $150,000 for the purchase of cattle; and (4) Delzers were injured by the Bank's breach of the contract. Delzers' deceit claim is based upon the same elements as the contract claim, plus the additional element that when United Bank promised to loan Delzers an additional $150,000 for the purchase of cattle, the Bank did not intend to perform its promise.(3) That is an "additional, independent fact[] not connected to the manner of the breach of contract." Delzer III, 527 N.W.2d at 654. United Bank's promise to loan money for the purchase of cattle, made without any intention of performing it, was "[t] ortious conduct . . . exist[ing] independently of the breach of contract." Pioneer Fuels, 474 N.W.2d at 710. As Delzer III, 527 N.W.2d at 654, observed, "[t] he problem present in Pioneer Fuels--the only evidence presented to support the tort claim was evidence of the breach of a contract--is not present here."
[¶11] We conclude that the trial court erred in granting United Bank judgment as a matter of law on Delzers' deceit and punitive damages claims.
II.
[¶12] United Bank contends there is no evidence Delzers sustained any damages from United Bank's deceit and, therefore, the trial court correctly granted judgment of dismissal as a matter of law. As we explain in the next part of this opinion, we conclude there was evidence of damages to Delzers.
III.
[¶13] The trial court alternatively granted United Bank a new trial on all issues, ruling that the jury verdict on the deceit claim was against the weight of the evidence. In reaching that conclusion, the trial court relied on three things: (1) all the loan documents were for $150,000; (2) Ray Delzer's October 30, 1979, letter and a follow-up note to Chuck Cowan that the trial court thought showed that the line of credit was for $150,000 and that Delzers hoped to buy cattle later with their own money; and (3) a bankruptcy document that the trial court thought showed that Delzers did not rely on a promise by United Bank of money for cattle.
[¶14] In Delzer I, we reversed a summary judgment for United Bank, holding that there were genuine issues of material fact on the meaning of the ambiguous $150,000 line of credit agreement and on whether there was a separate oral agreement for United Bank to extend an additional line of credit to Delzers for the purchase of cattle. In Delzer II, 484 N.W.2d 506-07, we said that the letter to Cowan, "however awkward for the Delzers to explain, is only one more item of extrinsic evidence to be weighed by the finder of fact," and we again reversed a summary judgment for United Bank and remanded for trial. Similarly, the bankruptcy document, wherein Delzers said they "presented a multitude of livestock programs in recent years to the United Bank of Bismarck, none of them which the bank would consider," is "only one more item of extrinsic evidence to be weighed by the finder of fact," Delzer II, 484 N.W.2d at 506-07. Thus, all of the evidentiary fragments used by the trial court to grant a new trial for the verdict being against the weight of the evidence presented questions of fact for the jury to decide. We conclude that the trial court abused its discretion in alternatively granting United Bank a new trial on the ground that the verdict on Delzers' deceit claim was against the weight of the evidence.
[¶15] United Bank asserted additional reasons for the order conditionally granting a new trial. United Bank contends ". . . there is no evidence the Delzers sustained any damages because of the alleged deceit. At the very least, a finding of damages is against the weight of the evidence." There was evidence that, if United Bank had loaned the money to buy cattle, Delzers would have had equity of over $550,000 in every year between 1979 and 1985, when the ranch was lost to foreclosure. Waldon A. Jensen, a retired banker with experience in agricultural loans, testified that "without livestock the entire operation was doomed to fail from the outset." David Saxowsky, an associate professor in agricultural economics, testified that one of the Delzers' losses was "the equity in their farm operation." Saxowsky testified that if the loan for cattle had been provided, the Delzer "operation would have begun to enjoy significant profits and would have begun to see their equity again growing." Raymond Delzer testified (1) that they lost their ranch in a foreclosure by the insurance company holding the first mortgage because they "failed to make the payments on it;" (2) that he was "not able to make the payments . . . [b] ecause I needed cattle to be able to service the debt, to make the payments;" (3) that he was unable to "get the money for cattle from other places . . . [b] ecause all of our collateral was tied up with the Bank, and I believed that when given the collateral, that they were going to furnish the cattle;" and (4) that he would not have pledged all of their "assets to United Bank without the promise of funds for cattle." United Bank's argument, that Delzers "would have lost money if the bank had lent them money for cattle," does not establish conclusively that Delzers had no damages. Even if Delzers "would have lost money" with cattle, a rancher's operating losses do not always result in a loss of the ranch to foreclosure of another lender's mortgage. Thus, there is substantial evidence of damages from the Bank's deceit, and we are unable to affirm that the jury's verdict on the deceit claim is against the weight of the evidence.
IV.
[¶16] United Bank contends that the trial court's instruction on damages for deceit was erroneous because it allowed the jury to award damages whether or not the detriment from the Bank's deceit could have been anticipated and for more than lost profits. The trial court instructed:
If you find that the Bank willfully deceived the Delzers, you may award adequate damages for the tort of deceit. Damages, if allowed, should be adequate fairly to compensate the Delzers for the detriment suffered. The measure of damages is the amount that will compensate for all detriment proximately caused by the Bank's deceit, whether or not it could have been anticipated. Damages in all cases must be reasonable, but may not be greater than the amount claimed or proved by the Delzers.
The statutory measure of damages for tort is defined in NDCC 32-03-20:
Measure of damages for tort. For the breach of an obligation not arising from contract, the measure of damages, except when otherwise expressly provided by law, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.(4)
The trial court's instruction that "[t] he measure of damages is the amount that will compensate for all detriment proximately caused by the Bank's deceit, whether or not it could have been anticipated," was a nearly verbatim expression of the statutory measure of damages. SeeNDJI-CIVIL 1210. As Kuntz v. Stelmachuk, 136 N.W.2d 810, 819 (N.D. 1965), reflects, the instruction was a correct statement of law.
[¶17] "[T] he measure of damages in tort is broader than that in contract," as the court in Twentieth Century-Fox Film Corp. v. Harbor Ins. Co., 149 Cal.Rptr. 313, 318 n.8 (Cal.App. 1978), explained.(5) Thus, Delzers' recovery was not limited to loss of profits, as United Bank contends. Even under a claim for breach of contract, a borrower's recovery is not necessarily limited to loss of profits.
[¶18] Substantial damages may be allowed for breach of a contract to lend money if "'special circumstances were known by both parties . . . from which it must have been apparent that special damages would be suffered in case of the failure to fulfill the obligation.'" Glatt v. Bank of Kirkwood Plaza, 383 N.W.2d 473, 484 (N.D. 1986), quoting Murphy v. Hanna, 164 N.W. 32, 38 (N.D. 1917). See also, Lincor Contractors, Ltd. v. Hyskell, 692 P.2d 903, 907 (Wash.App. 1984) (borrower could recover its loss of equity in a building not constructed because of the lender's breach of a contract to loan construction money); Stanish v. Polish Roman Catholic Union of America, 484 F.2d 713, 725 (7th Cir. 1973) (borrower may recover value of real estate development site from breaching lender who had first mortgage on borrower's only significant asset and knew borrower would be unable to borrow construction money elsewhere). Certainly like damages may be recovered under the broader measure of damages authorized by NDCC 32-03-20 for tort injuries. Furthermore, the detriment caused by the Bank's deceit could easily have been anticipated.(6)
V.
[¶19] United Bank contends the trial court erred in allowing the testimony of Saxowsky and Jensen because each one's testimony was based on an irrelevant analysis. United Bank's primary reason is that the measure of damages should have been limited to lost profits. We have already concluded that Delzers' permissible recovery was not limited to lost profits.
[¶20] The Bank complains that Saxowksy presented a computer model of what would have happened if the Bank had loaned the promised cattle money and that Saxowsky's analysis covered the whole Delzer operation, rather than just the feeder calf enterprise. We see nothing wrong with analyzing the effect of the promised loan and the Bank's failure to fulfill its obligation on the whole operation, rather than only on an isolated portion. The Bank did not distinguish between the different parts of this ranch enterprise when it required Delzers to pledge all their assets as collateral for the operating and cattle loans. Relevant evidence is generally admissible. NDREv 402. A trial court's determination on the relevance of evidence will not be reversed absent an abuse of discretion. Williston Farm Equip., Inc. v. Steiger Tractor, Inc., 504 N.W.2d 545, 548-49 (N.D. 1993). We conclude that the trial court did not abuse its discretion in allowing the testimony of Saxowsky and Jensen.
VI.
[¶21] Delzers contend the trial court erred in alternatively reducing the jury's exemplary damage award from $3,000,000 to twice the amount of compensatory damages awarded. The controlling statute, in effect when this claim arose, NDCC 32-03-07,(7)contained no requirement that exemplary damages be proportionate to the compensatory damages awarded.(8) Smith v. American Family Mut. Ins. Co., 294 N.W.2d 751, 764-66 (N.D. 1980). The trial court found that the $3,000,000 exemplary damage award was excessive and resulted from passion or prejudice on the part of the jury. The trial court recognized that NDCC 32-03.2-11(4),(9) not enacted until 1993, did not govern this case, but believed that it gave a "clear sense of direction." See Jerry Harmon Motors, Inc. v. Farmers Union Grain Terminal Ass'n, 337 N.W.2d 427, 432 (N.D. 1983) (when question of law presented for the first time, "we can take a sense of direction from the enactment" of later nonretroactive statute).
[¶22] "The reason for awarding punitive damages is to punish the wrongdoer in order to deter him, and others, from repetition of the wrongful conduct." Dahlen v. Landis, 314 N.W.2d 63, 68 (N.D. 1981). "Punitive damages are excessive when the amount of the award is so great that it indicates passion or prejudice on the part of the jury." Dewey v. Lutz, 462 N.W.2d 435, 443 (N.D. 1990). The trial court observed the witnesses and the jury and was in a better position than we are to determine if the jury's punitive damages award resulted from passion or prejudice. See Cook v. Stenslie, 251 N.W.2d 393, 399 (N.D. 1977) ("[T] he trial court observed and heard all witnesses, and thus occupied a position of advantage not available to us."). We are unable to conclude that the amount of punitive damages allowed, $1,076,000 after reduction by the trial court, are insufficient to punish United Bank for its conduct and to deter repetition of that wrongful conduct. As Cook v. Stenslie, 251 N.W.2d at 398, did, we "conclude that the trial court did not abuse its discretion in finding the damages excessive."
[¶23] In light of our dispositions, we need not address Delzer's contention that the trial court erred in excluding evidence of events after March 1, 1980.
[¶24] We reverse the judgment setting aside the jury verdict and remand for entry of a judgment largely reinstating the jury verdict in accordance with this opinion.
[¶25]
Herbert L. Meschke
Dale V. Sandstrom
William A. Neumann
Gerald W. VandeWalle, C.J.
[¶26] Ralph J. Erickstad, S.J., sitting in place of Maring, J., disqualified himself after oral argument. Consequently, the four remaining justices decided this case.
Footnotes: 1. Agreeing with the view expressed by Justice Story in Ocean Ins. Co. v. Fields, 18 Fed.Cas. 532, 539 (C.C.D. Mass. 1841), this court held in City of Wahpeton v. Drake-Henne, Inc., 228 N.W.2d 324, 326 Syllabus ¶ 8 (N.D. 1975): "There must be an end to litigation so that suits may not be immortal, while men are mortal." See also Federal Land Bank v. Ziebarth, 520 N.W.2d 51, 59 (N.D. 1994); Lang v. Bank of North Dakota, 377 N.W.2d 575, 579 (N.D. 1985). 2. The deceit claim was premised on the assertion that United Bank promised to loan Delzers money to purchase cattle and never intended to perform its promise. "[A] promise made without any intention of performing it, can constitute either deceit if there is no contract between the parties, or fraud if there is a contract and one party's apparent consent to the contract is obtained as a result of that promise." Delzer v. United Bank, 527 N.W.2d 650, 656 n.4 (N.D. 1995)(Delzer III). We also said that "Delzers' allegation that United made an oral promise to loan them an additional $150,000 with no intention of performing, sounds of fraud in the inducement of the written agreement." Id. Causes of action for fraud and breach of contract are not inconsistent. Glendale Fed S.& L. Ass'n v. Marina View Heights Devel., Inc., 135 Cal.Rptr. 802, 824 (Cal.App. 1977). One who has been fraudulently induced to enter into a contract may obtain damages for injuries from the fraud. West v. Carlson, 454 N.W.2d 307, 309 (N.D. 1990). NDCC 9-03-08(4) and 9-10-02(4) define actual fraud and deceit in the same way--"[a] promise made without any intention of performing." As United Bank recognized in its brief, the label given to Delzers' claim "does not affect the result. Their action was a tort claim for misrepresentation, no matter its label." 3. Kenneth Reno, Chief Executive Officer of United Bank, testified that on November 1, 1979, when Delzers executed the loan documents, United Bank did not "intend to provide the Delzers with money for cattle." 4. This statute has remained virtually unchanged from § 1860 of the Field Code proposed for, but not adopted by, New York in 1865. It was first adopted by Dakota Territory in 1865. See Civil Code of the Territory of Dakota, § 1860 (1865). See also, Civil Code of the Territory of Dakota § 1967 (Rev. Code 1877). California enacted the same provision in 1872 as § 3333, Cal.Civ.Code. 5. The court was comparing §§ 3333 and 3300, Cal.Civ. Code (which are the same, respectively, as NDCC 32-03-20 (tort damages) and as 32-03-09 (contract damages) that also contains the same language as Cal.Civ. Code § 3301). 6. United Bank anticipated it might acquire the Delzers' ranch if they did not repay the Bank's loan. A former director of United
Bank testified that when he expressed concern about Raymond Delzer's ability to "make the payments" on the loan being negotiated, bank officer Reno said "He'll make them. If he don't, we'll just take the ranch from him." Loss of the ranch to another lender as a result of United Bank's actions could equally have been anticipated. 7. NDCC 32-03-07 directed:
In any action for the breach of an obligation not arising from contract, when the defendant has been guilty of oppression, fraud, or malice, actual or presumed, the court or jury, in addition to the actual damages, may give damages for the sake of example and by way of punishing the defendant.
This section was repealed in 1987. 1987 N.D. Laws Ch. 404, § 13. 8. We have observed that tying an exemplary damage award to the amount of compensatory damages awarded, through a proportionality rule, "may defeat the punitive and deterrent objectives of exemplary damages" and "conflict[s] with the well-established principle that the punitive award may properly vary with the defendant's financial circumstances." Dahlen v. Landis, 314 N.W.2d 63, 69 (N.D. 1981). 9. NDCC 32-03.2-11(4) limits exemplary damages to "two times the amount of compensatory damages or two hundred fifty thousand dollars, whichever is greater." This subsection was enacted in 1993. See 1993 N.D. Laws Ch. 324, § 3.