1997 ND 180

Freida A. EHRMAN, Plaintiff
and Appellant,

v.

Bruce FEIST, Defendant, Third–Party
Plaintiff and Appellee,

v.

Roger L. EHRMAN, Ramona Thingvold,
and Janice Haugen, Third–Party
Defendants and Appellants.

Civil No. 960392.

Supreme Court of North Dakota.

Sept. 10, 1997.

Michael Ward (argued), of Eaton, Van de Streek & Ward, Minot, for plaintiff and appellant.

David J. Hogue (argued), of Pringle & Herigstad, PC, Minot, for defendant and appellee.

NEUMANN, Justice.

[¶ 1] Freida A. Ehrman appealed a January 17, 1997, district court memorandum opinion[1] entered in her eviction action against Bruce Feist. We reverse the award of attorney fees, affirm the remainder of the judgment, and remand for entry of an amended judgment.

[¶ 2] Hoping to begin a dairy operation, Feist rented a farmhouse, buildings, and pasture from Ehrman in 1991. On August 12, 1993, Ehrman and Feist executed a lease, providing in part:

"THIS AGREEMENT, made in duplicate, this *12th* day of August, 1993, by and between * *BRUCE FEIST and ANNA FEIST* *, husband and wife, . . . , hereinafter referred to as LESSEES, and * *FREIDA A. EHRMAN* *, . . . , owner of the real estate herein described, . . . , hereinafter referred to as LESSOR.

\*     \*     \*     \*     \*     \*

"I. *TERM*

"The term of this Lease shall be for a period of seven (7) years, commencing on December 1, 1993 and terminating on December 1, 2000, subject to renegotiation for a renewal term by the Parties at said time, in writing.

\*     \*     \*     \*     \*     \*

"III. *RENT*

"The LESSEES covenant and agree to pay cash rent for acres planted to corn, seeded hay acres and acres taken out of tillage production, the amount determined, annually, by the County Extension Office. . . .

"The remainder of the land not included in the cash rent acreage shall be farmed on a share basis, one-half share (50–50) to each for the first three (3) years of the seven (7) year term. At the end of the three year period, a cash rent will be negotiated on all land except that seeded into corn or hay. The LESSOR agrees to pay one-half of the cost, annually, for the following: seed, fertilizer, tillage and combining at the rate commonly used in the vicinity of location of the premises, for and during the three year term. In the event the land is leased on a cash rent basis by negotiations, such expenses rest with the tenant.

\*     \*     \*     \*     \*     \*

"V. *HAY MEADOWS*

"The LESSEES agree to cut and preserve all hay produced on land normally devoted to hay meadow (wild hay), on a share basis of two-thirds to LESSEES and

---

1. A judgment for Feist was entered against Ehrman on January 17, 1997, for $73,478.51. We will treat Ehrman's appeal as an appeal from the judgment. *See, e.g., McArthur v. North Dakota Workers Compensation Bureau,* 1997 ND 105, ¶ 1 n. 1, 564 N.W.2d 655 (1997); *First Am. Bank* *West v. Berdahl,* 556 N.W.2d 63, 63 n. 1 (N.D. 1996). While the notice of appeal lists Roger L. Ehrman, Ramona L. Thingvold, and Janice Haugen, third-party defendants, as appellants, the judgment is against only Freida Ehrman.

one-third to LESSOR, and to pay LESSOR the market value for the one-third share, annually, on or before November 1st of each year of the term of this Lease.

\* \* \* \* \* \*

## "X. GENERAL TERMS

"The Parties further agree as follows:

"a. That in the event the LESSEES become the purchasers of the premises described under negotiated terms and prices acceptable to the LESSOR, and if the LESSEES have placed improvements on the premises, such as, new fencing, addition to buildings, permanent improvements to the residence, corrals, the value of such improvements shall not be a factor in determining the reasonable sale price for the premises.

\* \* \* \* \* \*

"2. Provided, further, that if the LESSOR sells the premises to a third party or parties, other than the LESSEES, the LESSEES shall be paid the undepreciated value of any improvements made to said premises during the term of this Lease, and such payment shall be made to the LESSEES promptly upon sale of the premises.

## "XI. PRIOR RIGHT TO PURCHASE

"The LESSOR agrees and hereby does grant to the LESSEES, the pre-emptive right to purchase the land upon negotiated terms agreeable to both parties; that in the event of a sale at any time during the term of this Lease, the Lease may be terminated as of the date of such sale to the LESSEES."

[¶ 3] Before executing the written lease, Feist made improvements to the property, such as repairing fences, gates and buildings. After executing the written lease, Feist made major improvements to the property, such as replacing the floor in the barn and erecting a sixty-foot addition to the barn.

[¶ 4] Ehrman sued to evict Feist from the premises, alleging, among other things, that Feist had failed to pay rent and had committed waste. Feist answered the complaint and counterclaimed, alleging Ehrman had represented she owned the land but had only a life estate, that Ehrman had represented Feist would be able to buy the farm at the end of the lease term for a reasonable amount, and that in reliance on those representations, Feist had made improvements for which he was entitled to compensation. Feist filed a third-party complaint against Roger L. Ehrman, Ramona Thingvold, and Janice Haugen, Freida Ehrman's children, to clarify title to the property, alleging Ehrman had conveyed the property to them in 1987, reserving only a life estate. By stipulation of the parties, the claims were tried together in one bench trial.

[¶ 5] On July 12, 1996, the trial court issued partial findings of fact, conclusions of law, and order for judgment. The court declared Ehrman owned a life estate in the land, with the remainder interest owned by her children. The court found Ehrman failed to establish Feist had committed waste, and also found the lease unambiguously provided for a term of seven years. The court ordered dismissal of Ehrman's eviction complaint.

[¶ 6] On October 29, 1996, the trial court issued a memorandum opinion determining, among other things: (1) "Prior to the Lease, the parties had mutually agreed to a rental of the buildings and pasture for $265.00 per month"; (2) Under the lease, there were "116 acres subject to the cash rent," and "$25 per acre is a reasonable amount" for 1994 through 1996; (3) The lease covered 268 acres on a crop share basis under the provision involving any of the land not included in the cash rent acreage; (4) Bruce owed Freida $14,095 and Freida owed Bruce $5,896.07, with Freida's 1996 share-basis costs and Bruce's 1996 hay meadow payments to be determined later; (5) "[T]he Court does not have sufficient and competent evidence to assess [Feist's] labor costs to the capital improvements"; (6) $65,786.66 was "attributable as costs associated with the capital improvements to the barn"; (7) Ehrman was "responsible for the costs of repairing or replacing the furnace in the house"; (8) "As to the water well, both parties will be responsible for one-half of the cost"; (9) "Freida and Bruce must have contemplated the possi-

ble sale of the premises"; (10) In the first paragraph of the lease "Freida holds herself out as the owner"; (11) "Freida owned only a life estate in the property"; (12) "[A]t least by August 1990, Freida had knowledge of her type of ownership"; (13) "The Court does not believe it was the obligation of Bruce to investigate the actual ownership at the time of the Lease signing, since the consummation of a possible sale was to occur at a later time"; (14) "Freida did not attempt anything to clarify the ownership, and Bruce entered into the rental situation and possible sale of the premises with the understanding Freida had the legal right to do so"; (15) "Freida misled Bruce with material assertions in the agreement. Consequently, it is understandable to the Court that Bruce would begin to make business plans and decisions relative to the legal contract he held in his hand"; (16) Under NDCC 32–04–12, "the Court cannot force the complete sale of the property" because "Freida does not have the power to sell the remaindermen's interests"; (17) "[T]o resolve the dispute over the possible sale of the property and recovery of the barn capital improvements, the Court shall order the following:

"All of the applicable farmland in the Lease and all of the buildings and appurtenances thereto, including improvements, shall be appraised by a licensed appraiser ... on or before December 31, 1996. ... The Court then orders two (2) options:

"1. The first shall be sale of the property as a whole between Freida together with the third-party defendants and Bruce for the appraised value. Bruce shall receive credit for the separate appraisal for the barn improvements. The sale shall be completed within 60 days of the completed appraisals. This option would require the third-party defendants to give their consent ... on or before December 31, 1996.

"2. The second option, if the third-party defendants do not provide their consent or the sale fails for other reasons, shall grant Bruce a judgment against Freida for the amount of the appraised value of the barn capital improvements. The Lease shall continue for the remaining four (4) year period on a cash basis only.

It appears to the Court a $12,000 annual rent is reasonable for the farmland and farmstead and buildings to be paid in two installments of April 1 and November 1 of each year. If Freida and Bruce agree, the money judgment may be applied over the four (4) year period to the annual rent at a rate of 6% per annum. Additionally, since the Court found Freida had entered the original Lease with misleading information, the Court shall award in this option $10,000 in attorneys' fees and costs against Freida. All other terms and conditions of the Lease shall remain in effect."

[¶ 7] After receiving a report on the expenses left undetermined in its memorandum opinion of October 26, 1996, the district court, on January 13, 1997, ordered:

"To provide Bruce Feist for the recovery of his capital improvements and his costs and attorney's fees, the Court orders a recovery against Frieda Ehrman in the amount of $75,786.66. This recovery shall be reduced by $2,308.15, as identified in the letter of David Hogue, dated November 19, 1996, for the net amount which Bruce Feist owes Frieda Ehrman for the net expenses due her under the Lease, after considering the amounts owed to Frieda Ehrman for crop share expenses and the amount owed Frieda Ehrman by Bruce Feist for rent. Therefore, the Court orders the Clerk to enter a judgment in favor of Bruce Feist against Frieda Ehrman in the amount of $73,478.51."

A judgment was entered for Feist against Ehrman for $73,478.51. Freida Ehrman and the third-party defendants appealed.

I

[¶ 8] Ehrman contends she had no duty to advise Feist of the limited nature of her ownership of the land and, if she did, Feist was not damaged by its breach. She also contends that, under the lease, the sale terms must be "agreeable to both parties," and ambiguities in the lease should be interpreted against Feist, because it was drafted by Feist's attorney.

[¶ 9] Ehrman represented in the lease that she owned the leased land. Ehrman had a duty not to deceive Feist about her interest in the land. *See, e.g.,* NDCC §§ 9-03-08 (defining actual fraud), 9-10-02 (defining deceit), and 9-10-03 (damages for deceit). The trial court found Ehrman misled Feist about her ownership interest in the land. Whether a party has misrepresented a fact or misled another are questions of fact subject to the "clearly erroneous" standard of Rule 52(a), N.D.R.Civ.P. *Great Plains Supply Co. v. Erickson,* 398 N.W.2d 732, 735 (N.D.1986). The trial court found the parties contemplated a sale of the premises. Feist invested labor and money in improvements on the premises because he believed Ehrman was going to sell him the land after the lease terminated. Thus, Feist was damaged by Ehrman's failure to disclose her limited ownership interest in the land, which, because Ehrman had only a life estate, she could not sell to Feist. The trial court's findings that Ehrman misled Feist about her ownership of the land and that Feist acted thereon are not clearly erroneous.

[¶ 10] Ehrman argues ambiguities in the lease should be interpreted against Feist because his attorney drafted it. However, this court has consistently held a lease will ordinarily be construed most strongly against the lessor. *Olson v. Peterson,* 288 N.W.2d 294, 297 (N.D.1980); *Hamilton v. Winter,* 281 N.W.2d 54, 58 (N.D.1979); *Hughes Realty Co. v. Breitbach,* 98 N.W.2d 374, 377 (N.D. 1959); *Hieb v. Jelinek,* 497 N.W.2d 88, 92 n. 4 (N.D.1993).

## II

[¶ 11] Ehrman contends:

"[T]here is no evidence indicating that any agreement on the precise operative terms of an actual sale of the land—as opposed to a potential sale—was ever reached.... Bruce Feist himself admitted that his only right to purchase was only a right to later negotiate.... The original lease provided a right to purchase *only* if both parties could agree on the sale."

If Ehrman had owned the land in fee, the fact she and Feist had not agreed upon a specific price would not have precluded enforcement of Feist's right to purchase the land. Feist testified the purchase price was to be determined "[b]y appraisers on both sides," and the appraisers "were going to agree on a price" and exclude the value of the improvements Feist made to the premises. The lease, in Paragraph X, contemplated a "reasonable sale price for the premises" and provided the value of improvements made by Feist "shall not be a factor in determining the reasonable sale price for the premises." When parties have agreed to agree on a price, a court can fix a reasonable price. *See, e.g., Coldwell Banker–First Realty, Inc. v. Meide & Son, Inc.,* 422 N.W.2d 375, 381 (N.D.1988); *Drees Farming Ass'n v. Thompson,* 246 N.W.2d 883, 886–87 (N.D. 1976).

## III

[¶ 12] Ehrman contends "[e]ven, if contrary to all of the evidence, the trial court found that there existed an oral agreement outside of the pre-emptive provision in the lease to sell the land, such oral agreement would be unenforceable under NDCC 47–10–01." NDCC 47–10–01 provides:

"An estate in real property, other than an estate at will or for a term not exceeding one year, can be transferred only by operation of law or by an instrument in writing, subscribed by the party disposing of the same or by his agent thereunto authorized by writing. This does not abridge the power of any court to compel the specific performance of any agreement for the sale of real property in case of part performance thereof."

The trial court did not enforce the agreement to sell the property. The court offered two choices: (1) Ehrman, with the consent of her children by December 31, 1996, could sell the property to Feist for its appraised value; or (2) a judgment against Ehrman for the appraised value of the barn improvements and continuation of the lease for the remaining four years of its term at a cash rent of $12,000 per year. Furthermore, if a party takes possession of real property pursuant to an oral sale contract and makes substantial permanent improvements to the property in reliance upon that oral contract, NDCC 47–

10–01 does not bar specific performance of the contract. *Green v. Gustafson*, 482 N.W.2d 842, 848 (N.D.1992). "Part performance consistent only with the existence of an oral contract removes the contract from the statute of frauds." *Wachter Development, L.L.C. v. Gomke*, 544 N.W.2d 127, 132 (N.D.1996). Intent and the existence of an oral contract are questions of fact. *Id.* at 131.

## IV

[¶ 13] Ehrman contends the trial court erred "by failing to take into account that the lease provides for renegotiation after the first three years, and by instead imposing—by judicial fiat—a rental fee of $12,-000.00 per year."

[¶ 14] The lease provided for cash rent of land seeded to hay or corn for an amount to be determined by the County Extension Office. The other land included in the lease was to be farmed on a crop-share basis for the first three years of the lease. The lease provided that "[a]t the end of the three year period, a cash rent will be negotiated on all land except that seeded into corn or hay" (which was already being cash rented). The provision for negotiation of the cash rent for the last four years of the lease must be construed so that the lessor could not "demand rent at a prohibitive figure and make the option to renew worthless and of no effect." *Hughes Realty Co. v. Breitbach*, 98 N.W.2d 374, 377 (N.D.1959). "[P]rovisions for the renewal of a lease at a rental to be fixed by subsequent agreement of the parties" may be enforced "by allowing the courts to determine a reasonable rental amount, pursuant to § 9–05–07, N.D.C.C." *Drees Farming Ass'n v. Thompson*, 246 N.W.2d 883, 886–87 (N.D.1976). *See also Coldwell Banker–First Realty, Inc. v. Meide & Son, Inc.*, 422 N.W.2d 375, 381 (N.D.1988). We conclude the trial court could properly fix a reasonable cash rent for the final four years of the lease.

## V

[¶ 15] Ehrman argues the trial court should have terminated the lease because Feist did not do any fall plowing in 1994 and 1995 as required by the lease, he owed money to Ehrman, and he did not give Ehrman her share of the grain at her request. Ehrman's complaint about fall plowing is part of what she alleged constituted waste. Feist testified he did not do fall plowing in 1994 and 1995 because he did not have time and because of excessive moisture.

[¶ 16] Whether waste has occurred is a question of fact subject to the "clearly erroneous" standard of Rule 52(a), N.D.R.Civ.P. *Vogel v. Pardon*, 444 N.W.2d 348, 349 (N.D.1989). The trial court found Ehrman failed to establish Feist's farming practices constituted waste. That finding is not clearly erroneous. Feist owed Ehrman money at the time of trial and had not given Ehrman control of her share of crops at her request. Feist testified this was because he stopped paying rent and giving Ehrman grain after Ehrman failed to pay her share of expenses required by the lease. Both parties breached their payment obligations under the lease. The trial court accounted for all of the monies the parties owed each other in fixing the amount of Feist's judgment against Ehrman. Equity and the law abhor forfeitures. *Ridl v. EP Operating Ltd. Partnership*, 553 N.W.2d 784, 788 (N.D.1996). We conclude the trial court did not err in refusing to terminate the lease.

## VI

[¶ 17] Ehrman complains Feist did not give her her share of the straw produced on the crop-share land. Feist used some straw for bedding for his cattle and left some on the fields. The trial court found: "As to the claim for straw, nothing in the Lease addresses this issue, and the Court does not find that Freida's evidence has substantiated such a claim." We agree the lease does not address straw, nor is there any evidence in this record that there is a well-established custom concerning sharing straw so that the parties may be presumed to have acted with reference thereto. *Tong v. Borstad*, 231 N.W.2d 795, 800 (N.D.1975). *See also, e.g., Taghon v. Kuhn*, 497 N.W.2d 403, 406 (N.D. 1993) (holding where custom and usage on a subject are prevalent, they are impliedly incorporated into agreements to measure the

rights of the parties). We conclude the court's finding Ehrman failed to prove her claim is not clearly erroneous.

## VII

[¶ 18] Ehrman contends the trial court erred in awarding Feist attorney fees and costs of $10,000. "Absent a countervailing statutory authorization, the 'American Rule' generally assumes that each party to a lawsuit bears its own attorney fees." *Duchscherer v. W.W. Wallwork, Inc.*, 534 N.W.2d 13, 16 (N.D.1995). To support the trial court's award, Feist relies upon *Delzer v. United Bank of Bismarck*, 1997 ND 3, ¶ 9, 559 N.W.2d 531 (1997), for the proposition that punitive damages may be awarded against one who fraudulently induces another to enter into a contract by making a promise with no intention of performing it. NDCC 32–03.2–11 authorizes an award of exemplary damages "when the defendant has been guilty by clear and convincing evidence of oppression, fraud, or actual malice."[2] A finding of oppression, fraud, or malice is a prerequisite to an award of punitive damages. *Continental Cas. Co. v. Kinsey*, 499 N.W.2d 574, 579 (N.D.1993). "In reviewing appeals from bench trials, this court has strictly construed the requirements of § 32–03–07,[3] holding that the absence of a specific finding of oppression, fraud, or malice, actual or presumed, is fatal to an award of exemplary damages." *Olson v. Fraase*, 421 N.W.2d 820, 828 (N.D.1988). The trial court's finding that "Freida had entered the original lease with misleading information" does not constitute "a specific finding of oppression, fraud, or malice." We, therefore, conclude the award of attorney fees and costs cannot be sustained as an award of exemplary damages.

## VIII

[¶ 19] Ehrman contends "[t]he remedy that the court came up with under 'option two'—a forced sale of the capital improvements to Frieda during the remaining four years of the lease—defeats the express terms of the lease" in Article X. The trial court awarded Feist a money judgment against Ehrman as an equitable remedy. Feist's substantial investment of money and labor in improvements to the leased land was consistent only with an agreement that he could purchase it. Ehrman lacked the ability to sell the land because she owned only a life estate in it. The trial court's award of a money judgment for the improvements is consistent with the parties' ambiguously expressed intent and does not appear to be an inequitable remedy.

[¶ 20] Ehrman argues "[i]t is not equitable in that Frieda is being forced to provide the new barn for Bruce at her expense, but with no rent being obtained by her from Bruce for his use of it." The trial court found "a $12,000 annual rent is reasonable for the farmland and farmstead and buildings." "Property values are questions of fact subject to the 'clearly erroneous' standard of Rule 52(a), N.D.R.Civ.P." *In re Estate of Luken*, 551 N.W.2d 794, 798 (N.D.1996). The trial court's finding of the reasonable rental value of the premises is not clearly erroneous. Furthermore, Ehrman did not ask the trial court to fix a higher rent as a result of her cost of paying for the improvements, thus giving the trial court no opportunity to address this matter. "A party is limited on appeal to a review of questions presented to the trial court." *Thomas v. Stickland*, 500 N.W.2d 598, 601 (N.D.1993).

## IX

[¶ 21] Ehrman contends the trial court erred in refusing to allow testimony by two rebuttal witnesses to show Feist's farming methods resulted in waste. The trial court observed "this could go on forever that way," and ruled the proposed rebuttal testi-

2. Prior to its amendment in 1995 (1995 N.D. Laws Ch. 305, § 2), NDCC 32–03.2–11, and NDCC 32–03–07 before it, had authorized exemplary damages for "oppression, fraud, or malice, actual or presumed."

3. NDCC 32–03–07 was an exemplary damages statutory predecessor to NDCC 32–03.2–11. It was first enacted as § 1839 of the Civil Code of the Territory of Dakota (1865), and was derived from § 1839 of the Field Code, "which, although not adopted by New York for which it was proposed in 1865, was adopted by Dakota Territory in 1865 and by California in 1872." *Glatt v. Bank of Kirkwood Plaza*, 383 N.W.2d 473, 476 n. 4 (N.D.1986).

mony was irrelevant. "Absent an abuse of discretion, a trial court's determination on the relevance of evidence will not be reversed on appeal." *Ingalls v. Paul Revere Life Ins. Group,* 1997 ND 43, ¶ 23, 561 N.W.2d 273 (1997). "We will not overturn a trial court's admission or exclusion of evidence unless the trial court abused its discretion." *Id.* at ¶ 20, 561 N.W.2d at 280. "A trial court abuses its discretion when it acts in an arbitrary or capricious manner, or misapplies or misinterprets the law." *State v. Christensen,* 1997 ND 57, ¶ 5, 561 N.W.2d 631 (1997).

[¶ 22] Under Rule 402, N.D.R.Ev., relevant evidence is generally admissible. However, Rule 403, N.D.R.Ev., provides relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." " 'Rule 403 recognizes that "relevance does not ensure admissibility. There remains the question of whether its value is worth what it costs." ' " *Patterson v. Hutchens,* 529 N.W.2d 561, 563–64 (N.D.1995) quoting 1 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 403[01], p. 403–13 (1994), [quoting 1 *McCormick on Evidence* § 185, p. 779 (West 4th ed.1992) ]. Seven witnesses had already testified about whether or not Feist's farming methods caused waste. We conclude the trial court did not abuse its discretion in excluding additional cumulative evidence by rebuttal witnesses.

[¶ 23] The judgment is reversed to the extent it awards $10,000 for attorney fees and costs and is otherwise affirmed, and the matter is remanded for entry of an amended judgment.

[¶ 24] VANDE WALLE, C.J., MARING, and SANDSTROM, JJ., and RONALD L. HILDEN, District Judge, concur.

[¶ 25] RONALD L. HILDEN, District Judge, sitting in place of MESCHKE, J., disqualified.

