**Richard D. ANHELUK, Plaintiff,**

v.

**Richard A. OHLSEN and Richard A. Ohlsen, Ltd., Defendants.**

**No. A1–04–87.**

United States District Court,
D. North Dakota,
Southwestern Division.

Oct. 4, 2005.

---

Paul A. Sortland, Minneapolis, MN, for Plaintiff.

Thomas Richard Olson, Jeffries Olson & Flom PA, Fargo, ND, Richard Norval Jeffries, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

HOVLAND, Chief Judge.

Before the Court is the Defendants' Motion for Summary Judgment filed on June 17, 2005. For the reasons set forth below, the motion is granted.

## I. BACKGROUND

This is a legal malpractice action brought by the plaintiff, Richard D. Anheluk (Anheluk), against attorney Richard A. Ohlsen (Ohlsen). The legal malpractice action stems from an underlying lender liability lawsuit filed by Anheluk against Western Cooperative Credit Union (Western Cooperative), Elaine Muth (Muth), and Community First National Bank (Community First). The underlying action was commenced on June 23, 2000, and dismissed with prejudice on February 24, 2002.

Ohlsen represented Anheluk in the underlying action which was filed in North Dakota state district court. The lawsuit related to Anheluk's attempts to obtain an FHA-residential real estate mortgage loan from Muth at Western Cooperative in September 1993. The loan was in the amount of $67,500. Obtaining the loan in a timely fashion was important to Anheluk because he had an IRS tax liability of approximately $7,000 due on October 15, 1993. The loan application was taken on September 16, 1993, and Anheluk was assured "things looked good." While the loan application was being processed, Anheluk began moving his banking business from Security Bank of Hebron to Western Cooperative. During this time frame, Muth informed Anheluk that she was leaving Western Cooperative and would be going to work at another financial institution, Liberty National Bank (Liberty National). Muth offered Anheluk the option of taking his business to Liberty National. Anheluk declined and reported the solicitation to Western Cooperative president Alden Beggs. As a result, Muth ended up leaving Western Cooperative on October 7, 1993, which was earlier than planned. Muth's early departure apparently delayed the loan application process.

Anheluk went back to Security Bank of Hebron for financing but the relationship had soured, and Anheluk's request was denied. Western Cooperative president Beggs assured Anheluk that "we'll take care of you." On February 4, 1994, Western Cooperative issued a written loan commitment letter with conditions to Anheluk. Unhappy with the conditions placed on the loan by Western Cooperative, Anheluk sought and obtained a loan from Community First in June of 1994. Anheluk contends that the loan he obtained from Community First was not an FHA-insured loan that he had been seeking.

Anheluk first contacted attorney Richard Ohlsen in 1995 regarding the possibility of a lender liability action against Western Cooperative, Muth and Community First. However, Ohlsen was not retained until May of 2000. In June of 2003, a complaint was prepared, and a lawsuit commenced in Cass County state district court. Anheluk paid Ohlsen $1,706.66 and credited Ohlsen $782 for court reporting services Anheluk had performed for Ohlsen. The Defendants raised statute of limitations defenses and served discovery requests on Ohlsen. Ohlsen failed to respond to any of the discovery requests. The state district court granted a motion to compel and ordered responses to the pending discovery requests. Again, Ohlsen failed to respond. The district court gave notice of its intent to dismiss the

lawsuit and on March 22, 2002, granted the defendants motion to dismiss with prejudice. Ohlsen did not inform Anheluk that the case had been dismissed. In June of 2002, Anheluk learned from Community First's attorney that the case had been dismissed. The reason for the eventual dismissal of the lender liability lawsuit was the failure by Ohlsen to respond to discovery requests.

This action was originally commenced in Minnesota where Ohlsen's law office is located but was dismissed on May 19, 2004, based on a finding of forum non conveniens and pursuant to a stipulation that Ohlsen waive the statute of limitations defense. The current action was commenced on July 1, 2004. Discovery is complete and a trial is scheduled on November 29, 2005.

## II. STANDARD OF REVIEW

It is well-established that summary judgment is appropriate when, viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Graning v. Sherburne County*, 172 F.3d 611, 614 (8th Cir.1999). A fact is "material" if it might affect the outcome of the case and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The basic inquiry for purposes of summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376 (8th Cir.1996). The moving party has the initial burden of demonstrating to the Court that there are no genuine issues of material fact. If the

moving party has met this burden, the non-moving party cannot simply rest on the mere denials or allegations in the pleadings. Instead, the non-moving party must set forth specific facts showing that there are genuine issues for trial. Fed. R.Civ.P. 56(e). A mere trace of evidence supporting the non-movant's position is insufficient. Instead, the facts must generate evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. LEGAL DISCUSSION

As this is a diversity action, the Court will apply the substantive law of North Dakota. *Paracelsus Healthcare Corp. v. Philips Med. Sys.*, 384 F.3d 492, 495 (8th Cir.2004).

In North Dakota, a plaintiff asserting legal malpractice must allege and prove the following elements: (1) the existence of an attorney-client relationship, (2) a duty owed by the attorney to the client, (3) a breach of that duty by the attorney, and (4) damages proximately caused by the breach of duty. *Dan Nelson Constr. Inc. v. Nodland & Dickson*, 608 N.W.2d 267, 271 (N.D.2000). When it is alleged that an attorney negligently failed to perform some act on behalf of the client, the client must allege and prove that performance of the act would have benefitted the client, i.e., the case within a case. *Id.* The "case within a case" doctrine requires the client to prove that, but for the attorney's alleged negligence, the litigation would have been concluded in a manner more favorable to the client. *Id.* It is undisputed that only the element of causation is before the Court. Ohlsen contends that the undisputed material facts establish that Anheluk could not have prevailed in the underlying lender liability action

against Muth, Western Cooperative, and Community First.

There are several recent cases from the North Dakota Supreme Court which have established the principle of "the case within a case" in legal malpractice actions and have held there was no causation as a matter of law. The first case is *Wastvedt v. Vaaler*, 430 N.W.2d 561 (N.D.1988). In Vaaler, the district court granted attorney Vaaler and his law firm's motion for judgment notwithstanding the verdict and the North Dakota Supreme Court affirmed the district court's decision. The court noted that Vaaler had a conflict of interest, i.e., a breach of duty, but the plaintiffs had failed to demonstrate that a better price for the stock could have been obtained even by a lawyer who did not have a conflict of interest. 430 N.W.2d 561, 564–565.

The Vaaler court discussed "the case within a case" doctrine, and noted, "[t]hat doctrine applies to allegedly negligently conducted litigation and requires that but for the attorney's alleged negligence, the litigation would have terminated in a result more favorable for the client." 430 N.W.2d at 567. The court in Vaaler also stated, "[a]lthough we recognize that proximate cause and damages are generally questions to be decided by the trier-of-fact ... under the circumstances of this case, we conclude that there was no evidence from which the jury could have concluded that Vaaler's conflict of interest proximately caused damage to the plaintiffs." *Id.* at 568.

The second decision which establishes this principle is *Dan Nelson Const. v. Nodland & Dickson*, 608 N.W.2d 267 (N.D. 2000). In that case, the district court granted summary judgment in favor of the defendant attorney finding no causation and the decision was upheld by the North Dakota Supreme Court. The court said that even if the attorney had not made various legal arguments, his alleged negli-

gent act of failing to make those arguments was not, as a matter of law, the proximate cause of the client's damages. The court in Nelson noted the general rule that summary judgment is ordinarily inappropriate for legal malpractice actions, particularly with respect to the issue of proximate cause but "[n]evertheless, even though legal malpractice is to be determined by the rules that apply to professional negligence, this generalization is subject to the necessary qualification that the court must determine legal questions which underlie the ultimate decision." 608 N.W.2d 267, 272.

The third case is *Meyer v. Maus*, 626 N.W.2d 281 (N.D.2001). This case involved an appeal from the district court's granting the defendant's attorney's motion for judgment as a matter of law. The North Dakota Supreme Court affirmed the district court's decision that there was no evidence to support a finding that the conduct of the attorney and his law firm proximately caused the plaintiffs' damages. The Supreme Court in Maus again reiterated "the case within a case" doctrine which requires that, but for the attorney's negligence, the underlying litigation would have ended with a more favorable result for the client.

In this case, the evidence must be viewed in the light most favorable to Anheluk. Ohlsen contends that Anheluk's sworn testimony and the evidence demonstrates that Anheluk cannot establish the requirement of causation in this legal malpractice action. Ohlsen contends that a case of lender liability could not be successfully proven against the three defendants even if Ohlsen were negligent in allowing Anheluk's lender liability case to be dismissed because Anheluk would not have prevailed and no damages resulted.

The gravamen of Anheluk's complaint is one of "lender liability." The essence of

the complaint is based upon theories of contract and tort against Muth, Western Cooperative, and Community First for their alleged failure to obtain an FHA-residential loan for Anheluk. The underlying lender liability action against the defendants contains four separate causes of action: breach of contract, negligence, misrepresentation, and overreaching. The Court will address each of these legal theories.

## A. BREACH OF CONTRACT

The underlying lender liability complaint alleges breach of a written contract to loan money. A claim for breach of an oral contract to loan money is not clearly stated but can be found if the complaint is given a liberal construction.

### 1) ORAL CONTRACT—STATUTE OF FRAUDS

■ Anheluk has alleged that Muth, while working for Western Cooperative, promised him a loan but failed to make good on the promise. This was apparently the triggering event that led to all of the other problems which Anheluk detailed in the underlying complaint. Ohlsen contends that Anheluk could not have prevailed on his breach of contract claim against Western Cooperative based upon the alleged oral promise to make a loan because any such claim would be barred by the statute of frauds.

■ In order for a lender liability action to succeed based on a cause of action for breach of contract to make a loan, there must be a "promise" to make a loan. *Delzer v. United Bank of Bismarck*, 559 N.W.2d 531 (N.D.1997). In Delzer, the court outlined the elements for a claim of lender liability in contract as: (1) a promise to loan money; (2) reliance on the promise by the potential borrower; (3) breach by failing to loan the money; and

(4) injury suffered by the breach of contract.

Delzer involved an oral promise by the bank to lend money. However, the oral promise for the loan in Delzer occurred in 1979 which was before the enactment of the statute of frauds provision dealing with an agreement or promise for a loan of money. The applicable statute of frauds in North Dakota provides as follows:

> The following contracts are invalid, unless the same or some note or memorandum thereof is in writing and subscribed by the party to be charged, or by the party's agent:
>
> 4. An agreement or promise for the lending of money or the extension of credit in an aggregate amount of twenty-five thousand dollars or greater.

N.D.C.C. § 9–06–04.

Paragraph 4 of the above-quoted statute of frauds was enacted in 1991. This provision was in effect in September of 1993 when Anheluk applied for an FHA loan of $68,000 with Muth. Anheluk acknowledges that from September 16, 1993, to October 7, 1993, when he was dealing with Muth, there was no "writing," no "written loan commitment," and "no piece of paper" stating that an FHA loan had been approved. See *Deposition of Anheluk*, pp. 240–248, 262–263. It is clear and undisputed that Anheluk could not have prevailed on a breach of contract claim against Western Cooperative based upon an alleged oral promise to make a loan made by Muth because any such claim would be barred by the statute of frauds. The undisputed facts are that Muth never made a written promise to issue a loan. See *Deposition of Anheluk*, pp. 246–247. The defense of the statute of frauds assumes that there was an oral promise to make a loan. However, for the reasons outlined below, it is clear and undisputed

that no promise to make a loan, either oral or written, was ever made by Muth.

 Although the Court concludes, as a matter of law, that the statute of frauds applies in this case, part performance of an oral contract may remove the agreement from the statute of frauds. *Poyzer v. Amenia Seed & Grain Co.*, 409 N.W.2d 107, 111 (N.D.1987). However, the partial performance must be consistent with the existence of a valid oral agreement. The partial performance cited by Anheluk is essentially his taking steps to move several personal and/or business loans from Security Bank of Hebron to Western Cooperative. The record reveals that these actions were apparently taken by Anheluk based on the optimistic and encouraging statements of Muth. However, those statements fall far short of a legal and enforceable oral promise to loan money. Simply stated, the undisputed facts fail to support a finding that there was a definite, unconditional oral promise to loan money. The undisputed evidence reveals that the steps taken by Anheluk to move loans from the Security Bank of Hebron to Western Cooperative was not an express condition imposed upon Anheluk by Muth or anyone else at Western Cooperative in order to obtain an FHA loan. Anheluk's actions are not necessarily consistent with the existence of a definite and unconditional promise to make a loan. Such actions do not constitute partial performance of an alleged oral contract.

 In general, a failure to plead an affirmative defense results in a waiver of the defense. *Hansen v. First American Bank & Trust of Minot*, 452 N.W.2d 770, 771 (N.D.1990). The statute of frauds is an affirmative defense. N.D. R. Civ. P. 8(c). The purpose of the statute of frauds is to prevent fraud and perjury, and it is not to be used as an instrument to accomplish fraud. *Fladeland v. Gudbranson*, 681 N.W.2d 431, 434 (N.D.2004). Ohlsen

notes that the defendants in the underlying lender liability action did not plead the statute of frauds as an affirmative defense because the complaint did not specifically allege the breach of an oral contract but rather breach of a written contract. However, had the underlying case proceeded and the issue of an oral contract arisen, the defendants would have been allowed to amend their answers to assert the statute of frauds as a defense given the broad discretion courts have in allowing such amendments pursuant to Rule 15(a) of the North Dakota Rules of Civil Procedure.

 In this case, the Court concludes, as a matter of law, that the alleged oral contract falls within the parameters of the statute of frauds. The Court further concludes, as a matter of law, that Anheluk could not have prevailed in the underlying lender liability action based on a cause of action for breach of an oral contract. It is clear and undisputed from the record that no evidence has been presented to support a viable claim for breach of an oral or written contract. The parties agree that no written contract or agreement exists in this case. Therefore, summary judgment as a matter of law is appropriate as to the cause of action for breach of contract in the lender liability action. As a result, causation is lacking in the legal malpractice action.

### B) TORT CLAIMS

 The underlying complaint also alleged three causes of action sounding in tort, namely, negligence, misrepresentation and overreaching. A claim for negligence requires proof of a duty along with breach of that duty, causation and damages. *Ficek v. Morken*, 685 N.W.2d 98, 100–101 (N.D.2004). In the absence of a duty, there is no actionable negligence. *Id.* In order to determine whether Anheluk would have prevailed against Muth and

Western Cooperative on a lender liability claim based in tort for failure to make a loan, the Court must examine whether Muth ever made a promise to make a loan. Without proof of a promise to make a loan, there is no duty. In the context of a lender liability action, a claim for misrepresentation requires proof of duty in the form of a promise to loan money. *Delzer v. United Bank*, 559 N.W.2d 531, 534 n. 2 (N.D.1997).

■ The additional tort element of fraud or deceit supported the plaintiffs' tort claim for failure to make a loan in Delzer. The Supreme Court in Delzer explained that the claim of deceit required a "promise to loan money ... made without any intention of performing it" and existed independently of the claim for breach of contract. Delzer also noted that "[a] promise made without any intention of performing it, can constitute either deceit if there is no contract between the parties, or fraud if there is a contract and one party's apparent consent to the contract is obtained as a result of that promise." Thus, lender liability claims based on the torts of fraud, misrepresentation, or deceit require a promise.

### 1) WESTERN COOPERATIVE AND MUTH

■ Ohlsen contends that Anheluk would never have prevailed in the lender liability action against Western Cooperative and Muth. The gist of Anheluk's tort claims turns on whether Muth and Western Cooperative promised a loan to Anheluk. This determination is important because, as previously noted, without proof of a promise there is no duty to make a loan. A promise made without any intention of performance constitutes deceit or misrepresentation. *Delzer v. United Bank*, 559 N.W.2d 531, 534 n. 2 (N.D.1997). Since this was the first time Anheluk had done business with Western Cooperative, no

special relationship existed between them that could give rise to a duty except for the alleged promise to loan money.

It is undisputed that no writing exists to evidence such a promise. It is clear that Muth made encouraging statements to Anheluk that "things looked good", "it should be no problem," and "everything was fine." See *Deposition of Anheluk*, pp. 242–248, 254, 255. Nevertheless, there are no facts establishing that an FHA loan was ever orally promised to Anheluk by Muth before she left Western Cooperative on October 7, 1993. There was admittedly no unconditional, definite promise by Muth to make a loan. Anheluk's argument that the encouraging statements made by Muth constitute an unconditional promise to make a loan are not convincing. Anheluk acknowledged in his deposition that he understood that Western Cooperative would want to "check things out" and "assess the risk" before deciding to make the loan. See *Deposition of Anheluk*, pp. 225–226. This testimony is consistent with Anheluk's admissions that Muth never promised him a loan. Although Anheluk states that he thought he had a committed loan based on Muth's statements that "things looked good," he admits that the loan was not approved by October 7, 1993, when Muth left Western Cooperative; that Muth never told him it was a done deal and she never told him he had secured a loan. See *Deposition of Anheluk*, pp. 242–248, 255, 262–263. The Court concludes that Anheluk's assumptions that he had a committed loan based upon the generalized statements made by Muth cannot sustain a lender liability action based in tort.

■ The only other possible promise of a loan was a statement made by president Alden Beggs to Anheluk that "we'll take care of you." See *Deposition of Anheluk*, pp. 47, 56. This vague and generalized statement was made after Muth left West-

ern Cooperative and went to work for Liberty National. Western Cooperative did in fact offer Anheluk a loan as evidenced by a February 4, 1994, loan commitment letter. However, Anheluk rejected the offer as it contained a number of conditions, including some repairs to the property, which Anheluk could not or would not accept. Anheluk then went to Community First for a loan which he obtained in June of 1994. Anheluk's rejection of Western Cooperative's loan offer effectively insulates Western Cooperative from a lender liability action. Had Anheluk accepted the offer, relied upon it to his detriment, and then had Western Cooperative refuse to make the loan, the result may be different.

The Court concludes, as a matter of law, that Anheluk has not established a factual or legal basis for a successful lender liability action against Muth or Western Cooperative based in tort.

### 2) COMMUNITY FIRST

■ Ohlsen also argues that Anheluk would not have been successful in a lender liability action against Community First for failure to obtain a loan that was FHA endorsed. Anheluk obtained a loan from Community First in June of 1994. Ohlsen contends that Anheluk's own delinquency in making his initial payment to Community First disqualified his FHA status. Anheluk did not learn that his loan was not FHA insured until sometime in 1996.

Ohlsen contends that Anheluk's failure to make the payments on the loan he obtained from Community First disqualified his FHA status. Anheluk disputes this point and cites to a July 10, 1996, letter from the Department of Housing and Urban Development to Norwest Mortgage to bolster his assertion that FHA status was never obtained because Community First failed to have the loan properly endorsed.

Even assuming for the sake of argument that Community First was negligent in failing to obtain an FHA loan, the issue of damages proximately caused by such negligence remains. It is undisputed that Anheluk failed to make the payments on the loan and fell into delinquency within two months of obtaining the loan from Community First. Anheluk has made no showing as to how the lack of FHA status harmed him when he failed to make the loan payments other than claim he would have been eligible for a deferment. The failure to make loan payments is Anheluk's fault and not the fault of Community First. Given the absence of evidence demonstrating any damages proximately caused by Community First, the Court concludes that Anheluk's underlying lender liability action against Community First would fail as a matter of law.

■ In summary, Anheluk has failed to establish a factual or legal basis for a lender liability action against Elaine Muth, Western Cooperative Credit Union, or Community First National Bank. The principle of the "case within a case" controls in this legal malpractice action. There is simply no causation as a matter of law.

The Court agrees that there is no excuse for the gross misconduct of attorney Richard Ohlsen in ignoring discovery motions, failing to communicate with Anheluk, and failing to advise Anheluk about the pending discovery motions which ultimately resulted in the dismissal of the original complaint. To fail to communicate with a client and to ignore discovery requests which result in the dismissal of a client's case with prejudice is unconscionable. Unfortunately, the lender liability lawsuit commenced by attorney Ohlsen was also ill-advised. Hopefully, appropriate attorney disciplinary measures will be taken by the Supreme Court of Minnesota to address this travesty.

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS the Defendants' Motion for Summary Judgment (Docket No. 21). The Clerk shall enter judgment accordingly.

IT IS SO ORDERED.