**ALLIED CONTRACTORS, INC.**

v.

**UNITED STATES.**

No. 195-58.

United States Court of Claims.

Decided May 4, 1960.

———◆———

Horace S. Whitman, Washington, D. C., for plaintiff.

Cyril Moscow, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

JONES, Chief Judge.

This suit involves a construction contract. The plaintiff claims that it was required to do extra work because of unforeseen conditions in the form of hard rock shale which was outside the scope of the contract.

On Thursday, September 20, 1951, a division of the Department of the Army issued an invitation to bid for the construction of garages, the paving of a parking area, and the excavation of trenches and the erection of a wire fence at the National Guard Motor Vehicle Storage Building in Garrett County, Maryland. Because of emergency need, the invitation required the bids to be submitted by 2 p. m. on Wednesday, September 26, 1951.

The invitation required the successful bidder to furnish all plant, labor, materials and equipment, and to perform all work for the project in accordance with the specifications and drawings.

Within the limited time provided the plaintiff's representative examined the drawings and specifications and the invitation to bid, visited the site, which was more than 100 miles from its principal office in Baltimore, and submitted a bid. It was awarded the contract to construct the project for the lump sum price of $52,204.

There were several additional contracts let to other contractors for construction at the same site. These included a motor vehicle storage building, the construction of a road, and a boilerhouse addition to the motor vehicle storage building.

The entire area was to be fenced by the plaintiff in addition to the construction of garages and the parking area. None of the construction involved in the other contracts required as deep excavation as that required of plaintiff. Plaintiff was to build four garages in addition to a parking lot. It was required to do excavating both for the parking lot and the footings or trenches of a total length of between 500 and 600 feet. Near the bottom of the trenches the plaintiff encountered hard rock shale which it asserts was unforeseen and which was not

contemplated by either party to the contract and was not covered by the terms of the contract.

A pertinent provision of the specifications on the subject of excavation is found in subparagraph 3-1(b), which is as follows:

"(b) Type of material to be excavated in all cases such as can be moved by normal job labor and equipment, power shovels, without resorting to blasting."

The single issue in this case is whether the material in the lower part of these excavations could be moved by normal job labor and equipment without resort to blasting. The findings set out in detail the nature of the work and the conditions upon which plaintiff's claim is based.

We have found that normal job labor and shovels and the usual normal equipment were not sufficient to remove this hard rock shale without blasting. The plaintiff was not permitted to blast. The plaintiff found that while the bulldozer and the backhoe were sufficient to remove the upper part of the material, neither of them was sufficient to remove the consolidated and hard rock which was found as the excavation ran deeper. At that point the rock could not be removed by pick and shovel or by powered machines such as shovel or backhoe. The backhoe operates something like a power shovel. It has a bucket attached to the boom and operates in reverse so that the bucket moves toward the equipment instead of away from it, as does the power shovel. The plaintiff found that by the use of the power shovel and the backhoe in the hard rock not only would the machinery be injured but the ground so torn up as to interfere with the proper walling and foundations.

The plaintiff found that the rock structure could only be removed by using pneumatic equipment which consisted of a compressor and a breaker, or by blasting. It was forbidden to use blasting because of the injury that might be caused to the foundations of buildings and other structures. The pneumatic method proved effective but the excess cost of this method amounted to about $20 per cubic yard of materials removed.

A designated representative of the contracting officer examined the site before the full depth of the excavation had been finished. He determined at that time that the excavation was within the terms of the contract and could be removed by normal methods, labor and equipment. However, he later examined the conditions in the parking area and found that hard rock was encountered and recommended the plaintiff be paid $20 per cubic yard for the excess cost of the excavation in the parking area. Apparently, he did not again examine the other portion of the excavation, although it developed that practically the same hard rock condition developed in the deep part of that excavation as had been disclosed in the parking area.

Plaintiff was issued a change order for the excavation in the parking area and was paid therefor. However, it was refused payment for the 229.94 cubic yards of the material which plaintiff excavated from the garage footings, the garage floor area, the utility trench, and the gatepost holes, as set forth in finding 13, and set forth in detail in the latter part of finding 15. The excess cost of this material at $20 per cubic yard totals the sum of $4,598.80.

The defendant contends that the decision of the Armed Services Board of Contract Appeals, which was adverse to the plaintiff to the effect that no changed condition was encountered, was a factual issue and is supported by substantial evidence. The defendant also contends that plaintiff failed to give timely written notice of the changed condition.

We have set out in finding 17 in full detail the reason why both of these defenses must be rejected. There is no evidence of any kind that the hard material in the footings and the trenches could have been removed by a power shovel. There was testimony that it could have been removed by a backhoe. However,

this evidence is conflicting and taken as a whole is neither persuasive nor substantial. The overwhelming weight of the credible evidence is that a backhoe could not have been used effectively and efficiently to remove the material which was too hard to be thus removed. It is also very clear that in all probability such effort would have materially damaged the expensive equipment that would have been involved. In addition, the testimony indicates that if the backhoe could have been used it would have left voids beyond the neat lines of the sides or bottom of the footing. This would have required the contractor to fill such voids with concrete at its own expense. The testimony shows that this is not a practical or efficient contract procedure and could not have been within the contemplation of the parties.

As to the question of written notice, the contracting officer or his designated representative was thoroughly familiar with the written requests of the plaintiff for payment of the excess cost occasioned by the removal of the hard rock conditions that were encountered. They discussed these claims from time to time and when the final adverse decision was made the plaintiff appealed that decision. It had filed a written notice originally and we do not construe that it must file an additional claim for excess cost every time a new rock was discovered. A part of the board's finding is in the nature of a conclusion of law.

The facts and the evidence when taken as a whole in the light of the conditions that developed are so overwhelming as to preclude any other reasonable conclusion than that unforeseen conditions developed which made it impossible to remove the hard material thus encountered by normal job labor and equipment and pick shovels. The plaintiff is entitled to recover the sum of $4,598.80.

It is so ordered.

LITTLETON (Retired), LARAMORE, MADDEN, and WHITAKER, Judges, concur.