Duane BYE, Plaintiff, Appellant
and Cross–Appellee,

v.

Jerome James MACK, John H. Moosbrug-
ger, Richard A. Ohlsen, Shirley Ann
Dvorak, and Ralph F. Carter, individual-
ly and as members of the law firm of
Mack, Moosbrugger, Ohlsen, Dvorak,
Carter, Attorneys at Law, Defendants,
Appellees and Cross–Appellants,

and

Jane M. Freeman, Defendant
and Appellee.

Civ. No. 930301.

Supreme Court of North Dakota.

July 18, 1994.

Duane Bye, pro se.

Kermit Edward Bye (argued), of Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, for defendants, appellees, and cross-appellants.

Craig Robert Campbell (argued), of Gunhus, Grinnell, Klinger, Swenson & Guy, Fargo, for defendant and appellee.

MESCHKE, Justice.

Duane Bye appealed judgments dismissing his legal malpractice action against Jerome James Mack, John H. Moosbrugger, Richard A. Ohlsen, Shirley Ann Dvorak, and Ralph F. Carter, individually and as members of the Law Firm of Mack, Moosbrugger, Ohlsen, Dvorak, Carter, Attorneys at Law, and Jane Freeman. The defendants other than Freeman cross-appealed. We affirm.

Duane Bye, Marvin Arlien, and Roger Elvick formed "Custom Farm Services, Inc." (CFS) as part of a plan to facilitate the purchase of Bye's custom combining equipment by Arlien and Elvick. The corporate enterprise was unsuccessful. Arlien default-ed on bank loans, and Elvick and Bye became liable on personal guaranties of that debt. Elvick acquired sole control of the corporation. Bye continued to incur debts and make payments to finance Elvick and CFS. Bye eventually agreed to buy Elvick's farm to enable Elvick to repay some of his debts.

To purchase Elvick's farm, Bye obtained a first mortgage loan from Federal Land Bank for $730,000 and executed a second mortgage to Elvick for $288,500. Bye gave an unsecured promissory note to Elvick for the difference between the mortgages and the purchase price, an amount they calculated to be $50,000. Elvick later discovered that the difference was actually $59,500. Bye and Elvick agreed that Bye would execute a note for $59,500 and Elvick would return the $50,000 note at a later meeting. Elvick failed to attend the meeting and, upon closing of the sale and loan, he placed the bulk of the land sale proceeds in a spendthrift trust. Elvick made no effort to pay Bye or any of his debts.

Bye sued Elvick for all debts he had incurred on behalf of CFS. The trial court awarded Bye $258,503.79, plus interest, that he had paid on behalf of CFS and Elvick, voided the $50,000 promissory note originally executed in Elvick's favor, and found that the conveyance of the land sale proceeds to the spendthrift trust was fraudulent and void. In *Bye v. Elvick*, 336 N.W.2d 106 (N.D.1983), we affirmed that judgment on appeal.

In 1984, Bye sued Federal Land Bank Association of Grand Forks (FLB); FLB employees Elmer Hillesland, Lee Reddig, and Ryan Westgard; First State Bank of Sharon (Bank) and its president, Warren Bud Smith. The complaint alleged: (1) that Bye's loan transaction with FLB included an agreement for disbursement of the $730,000 loan funds; (2) that FLB distributed $22,000 from the Bye loan funds to Roger Elvick in breach of the loan agreement; (3) that FLB distributed $244,253.48 from the Bye loan funds to an agent of Roger Elvick in breach of the loan agreement; (4) that Bye and Elvick had agreed that substantial sums from the FLB loan would be paid to Bye to satisfy most of Elvick's debt to Bye, and that

the defendants were aware of that disbursement agreement; (5) that before the closing of the land sale and disbursement of the loan funds, Roger Elvick, as settlor, executed a trust agreement containing a spendthrift clause making its assets unreachable by Elvick's creditors; (6) that Bye was forced against his will to sign an authorization permitting disbursement of the $244,253.48 to Roger Elvick because Hillesland threatened to call the entire $730,000 loan and foreclose the mortgage if Bye did not consent to the disbursement; and (7) that an agent of Elvick transferred the $244,253.48 immediately into the spendthrift trust, and that Elvick has not paid Bye the amounts he owes Bye.

On July 28, 1987, the trial court granted summary judgment in favor of the Bank. On August 18, 1987, the court granted summary judgment in favor of FLB. Bye filed a notice of appeal on August 24, 1987, "from the Summary Judgment entered . . . on the 28th day of July, 1987." Thus, Bye did not appeal from the judgment entered in favor of FLB. In *Bye v. Federal Land Bank*, 422 N.W.2d 397 (N.D.1988), we dismissed the appeal because no appeal was taken from the final judgment of August 18, 1987, the time for appeal had expired, and we were therefore without jurisdiction to consider the appeal.

Bye began this malpractice action in 1990 against the defendant attorneys, the defendant law firm, and Freeman, an associate of the firm, who drafted and filed the notice of appeal from the summary judgment dismissing the Bank, but who failed to appeal the summary judgment dismissing FLB in Bye's previous action. Bye alleged (1) that he suffered damage as a direct result of Freeman's negligence in failing to appeal from the FLB judgment, and (2) that he suffered damage as a direct result of the law firm's carelessness in supervising and guiding Freeman in her preparation of the appeal. Bye also alleged:

As a direct and proximate result of the negligence and carelessness on the part of all the Defendants, the right of the Plaintiff to have his day in the Supreme Court was forfeited and the Plaintiff believes that if he had been afforded his appeal in the Supreme Court, he would have had the

decision of the District Court reversed and been victorious in his lawsuit.

Bye sought actual damages of $266,253.48 for the amount of loan proceeds that he alleged in the FLB suit had been wrongly disbursed to Elvick or his agent, as well as consequential, special, and exemplary damages, together with interest, costs, and disbursements.

After trial of the malpractice action, the trial court concluded:

3. By not filing an appropriate Notice of Appeal pursuant to Rule 4(a), NDRAppP, Defendant Jane Freeman conducted herself in a manner below the standard expected of a reasonably prudent attorney practicing in this state. Likewise, as the supervisor of relatively recent law school graduate and one who had also discussed the appeal in question with the Plaintiff, Defendant Jerome James Mack was negligent in failing to ensure that the Bye Notice of Appeal was in compliance with the North Dakota Rules of Appellate Procedure prior to its filing. . . .

4. Had the Defendants properly perfected the Plaintiff's appeal, however, a preponderance of the evidence failed to establish that the issues presented on appeal would have been sufficient to reverse the adverse summary judgments. . . .

5. Even if the summary judgments would have been reversed but for the untimely filing of appeal, the Plaintiff has still failed to prove by a preponderance of evidence that any of the Defendants in the underlying lawsuit proximately caused him to suffer any monetary damages. As clearly pointed out in *Bye v. Elvick*, in which Plaintiff Duane Bye prevailed, it was against Mr. Elvick that Mr. Bye had his recourse. The mere fact that Mr. Elvick may now be judgment proof does not, in and of itself, create liability for the Defendants in this litigation for any monetary loss sustained thereby by Mr. Bye.

Judgments of dismissal were entered accordingly. Bye appealed, and the defendants other than Freeman cross-appealed.

To prevail in a legal malpractice action, a claimant must establish: (1) an attorney-client relationship; (2) a duty by the

attorney to the client; (3) the attorney's breach of that duty; and (4) damage to the client proximately caused by the breach of duty. *Wastvedt v. Vaaler*, 430 N.W.2d 561 (N.D.1988). The standard of care required of an attorney performing professional services is "that degree of skill, care, diligence, and knowledge commonly possessed and exercised by a reasonable, careful, and prudent lawyer in the practice of law in the State." *Id.* at 565. The case-within-a-case doctrine "applies to allegedly negligently conducted litigation and requires that but for the attorney's alleged negligence, the litigation would have terminated in a result more favorable for the client." *Id.* at 567. Where the plaintiff claims that an attorney negligently failed to perform some act on behalf of the client, the plaintiff must prove that if the attorney had performed the act it would have turned out beneficially to the client. *Swanson v. Sheppard*, 445 N.W.2d 654, 658 (N.D.1989). A malpractice plaintiff must prove "by a preponderance of the evidence not only that his attorney was negligent, but that the negligence was the proximate cause of his damage." *Martinson Bros. v. Hjellum*, 359 N.W.2d 865, 872 (N.D.1985). In a case like this, where the underlying action was concluded by summary judgments that were not appealed because of an attorney's alleged negligence in failing to perfect the appeals, "the plaintiff will be required to recreate, i.e. litigate, an action which was never tried." 2 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 27.7, p. 641 (3d Ed.1989). In that situation, a legal malpractice claimant must prove two claims: first, the one that was lost, and also that his attorney's negligence caused that loss.

Malpractice negligence, proximate cause, and damages are questions of fact. *Martinson Bros. v. Hjellum;* Mallen & Smith, *Legal Malpractice* § 27.7. In this case, although labeled as conclusions of law by the trial court, its quoted conclusions 3, 4, and 5 above are actually findings of fact to the extent that they deal with negligence, proximate cause, and damages.

A trial court's findings of fact "come here well armed with the buckler and shield of ... [Rule] 52(a)." *Hirschkorn v. Severson*, 319 N.W.2d 475, 479 (N.D.1982), quoting *Horton v. U.S. Steel Corp.*, 286 F.2d 710, 713 (5th Cir.1961). A party challenging a finding of fact on appeal has the burden of demonstrating that it is clearly erroneous. *Dick v. Dick*, 414 N.W.2d 288 (N.D.1987). In reviewing findings of fact, we view the evidence in the light most favorable to the findings. *Layman v. Braunschweigische Maschinenbauanstalt, Inc.*, 343 N.W.2d 334 (N.D.1983). Findings of fact are not clearly erroneous merely because we may have viewed the facts differently if we had been the trier of fact. *Giese v. Morton County*, 464 N.W.2d 202 (N.D.1990). A choice between two permissible views of the evidence is not clearly erroneous. *Gillmore v. Morelli*, 472 N.W.2d 738 (N.D.1991). As we said in *Dick v. Dick*, a finding of fact is clearly erroneous only when the reviewing court, upon review of the entire evidence, is left with a definite and firm conviction that a mistake has been made.

Bye did not show that FLB had agreed to disburse any of the proceeds of his FLB loan to Bye and not to Elvick. In fact, a former FLB attorney who had been responsible for over 100,000 loan closings testified that it was FLB policy to pay the proceeds of a land-purchase loan to the seller of the land and not to the borrower purchasing the land. Even though a mortgagor has some control of the mortgagee's disbursement of loan proceeds for purchase of the mortgaged realty, the mortgagor must prove that he directed a different disbursement acceptable to the mortgagee in order to prove a breach of contract by the mortgagee.

The purchase agreement between Bye and Elvick recited that Elvick was to be paid in cash for the land. Bye authorized in writing the disbursement of a draft to Elvick for $244,253.48. Bye asserts that he signed the release because of threats by FLB's employee Hillesland to call the loan and foreclose. *See Mellon v. Norwest Bank*, 493 N.W.2d 700, 703 (N.D.1992) (One challenging the validity of a contract on the ground of economic duress, which has not been expressly adopted in North Dakota as a defense to enforcement of a contract, must establish " 'that circumstances permitted no other alternative.' ")

[quoting *Oskey Gasoline & Oil Co., Inc. v. Continental Oil Co.,* 534 F.2d 1281, 1286 (8th Cir.1976) ]. Bye, who was represented by counsel at the time of the loan transactions, has not, however, shown that he had no alternatives available to him. Furthermore, in the *Bye v. Elvick* litigation, Bye received a judgment against Elvick for $340,338.60, that stood as an offset against what Bye owed Elvick for the farmland.

Bye failed to prove that FLB improperly disbursed any loan proceeds to Elvick or improperly failed to pay loan proceeds to Bye. Bye assented in writing to the disbursement of loan proceeds to Elvick. Bye's later judgment in the *Bye v. Elvick* litigation offset what Bye owed Elvick for the farmland. That evidence sufficiently supports the trial court's finding of fact that Bye "failed to prove by a preponderance of evidence that any of the Defendants in the underlying lawsuit proximately caused him to suffer any monetary damages." The finding is, therefore, not clearly erroneous. Thus, Bye failed to establish an essential element of a legal malpractice action—damages to the client proximately caused by the attorney's breach of duty.

For the reasons stated, we affirm the judgments dismissing Bye's legal malpractice action against all the defendants. This disposition makes it unnecessary for us to decide the cross-appeal. *See Shark v. Thompson,* 373 N.W.2d 859, 862 n. 2 (N.D.1985) (no need to address question raised on cross-appeal when disposition on merits of appeal affirmed judgment fully resolving dispute). We affirm.

VANDE WALLE, C.J., SANDSTROM and NEUMANN, JJ., and ERICKSTAD, Surrogate Justice, concur.

RALPH J. ERICKSTAD, Surrogate Justice, sitting in place of LEVINE, J., disqualified.