2000 ND 61

**DAN NELSON CONSTRUCTION, INC.,
Dan Nelson Construction, and Dan
Nelson, Plaintiffs and Appellants,**

v.

**NODLAND & DICKSON, a partnership,
and Irvin B. Nodland, P.C., dba Nod-
land Law Offices, Defendants and Ap-
pellees.**

No. 990185.

Supreme Court of North Dakota.

March 23, 2000.

James L. Norris, James L. Norris, PC, Bismarck, N.D., for plaintiffs and appellants.

Rebecca S. Thiem (argued) and James S. Hill (appearance), Zuger Kirmis & Smith, Bismarck, N.D., for defendants and appellees.

KAPSNER, Justice.

[¶ 1] Dan Nelson Construction, Inc., Dan Nelson Construction and Dan Nelson ("Nelson") appealed from a summary judgment dismissing Nelson's legal malpractice

action against Nodland & Dickson, a partnership, and Irvin B. Nodland, P.C., doing business as Nodland Law Offices ("Nodland"). We conclude the trial court correctly ruled Nodland's alleged negligent act was not, as a matter of law, the proximate cause of any of Nelson's damages. We affirm.

I

[¶ 2] Nelson, the owner of a Beach, North Dakota-based earth-moving company, was the successful bidder on a Wyoming state project to reclaim a portion of abandoned, open-pit, uranium mines in the Gas Hills area of Wyoming. On October 19, 1990, Nelson entered into a contract with the State of Wyoming, Department of Environmental Quality, Land Quality Division, and began work on the project in November 1990.

[¶ 3] The contract contained two provisions requiring Nelson to give written notice to the State before any changes could be made to the contract. One provision, titled "Unforeseen Physical Conditions," stated, "CONTRACTOR shall promptly notify OWNER and ENGINEER in writing, within 15 days, of any subsurface or latent physical conditions at the site differing materially from those indicated on the Surface or in the Contract Documents." The other provision, titled "CHANGE OF CONTRACT PRICE," stated, "Any claim for an increase in the Contract Price shall be based on written notice delivered to OWNER and ENGINEER within 15 days of the occurrence of the event giving rise to the claim."

[¶ 4] In January 1991, Nelson began encountering problems with rock and difficulty in handling contaminated water. In early May 1991, Nelson realized he was losing money on the project. In a May 28, 1991 letter to the State and the project engineer, Nelson asked for additional compensation based on "unforeseen and changed conditions at the site" because, although he had initially anticipated having to move 600 cubic yards of rock, he had

instead uncovered about 120,000 cubic yards of rock. Nelson claimed monetary losses of $481,791.76 for the four-month time period from January 18, 1991 to May 20, 1991, and requested the original $1,906,779.52 contract amount be increased by $731,014.96. Nelson continued working and completed the project in October 1991.

[¶ 5] After Nelson submitted his May 28, 1991 letter, the State exercised a contract option and entered into mediation with Nelson on his claim. Mediation efforts were unsuccessful, and on April 8, 1992, Nelson, who had hired a Wyoming attorney to represent him, filed a claim with the Wyoming Department of Administration and Information and with the Department of Environmental Quality. Also on April 8, 1992, Nelson filed a complaint in Wyoming state district court against the State of Wyoming, the project engineer and the project designer. Nelson's Wyoming attorney attached to the complaint a copy of Nelson's April 8, 1992 claim filed with the State agencies.

[¶ 6] The State filed a motion to dismiss, alleging the Wyoming district court lacked jurisdiction because Nelson failed to file an itemized claim with the State before filing the complaint as required by Wyoming law. Nelson's attorney opposed the motion. The State answered the complaint in July 1992, but did not allege as a defense that Nelson failed to give written notice of his claim to the State within the 15–day contract requirements.

[¶ 7] Nelson's Wyoming attorney withdrew from representing Nelson in October 1992. On November 16, 1992, Nelson signed a contingent fee agreement with Nodland, and in December 1992, Nodland, along with a different Wyoming attorney, entered appearances in the case on behalf of Nelson.

[¶ 8] In June 1993, the State moved for summary judgment, arguing the case should be dismissed because Nelson failed to follow the contractual notice requirements and ·the statutory notice requirements of the Wyoming Governmental Claims Act. The project engineer also moved for summary judgment. Nodland, through a newly hired associate, opposed the motions. After oral argument, the Wyoming district court in August 1993 granted the State's summary judgment motion. The court granted the State's motion because the provision governing "CHANGE OF CONTRACT PRICE" required Nelson to file his claim within 15 days of the occurrence of the event giving rise to the claim, and because Nelson had encountered excessive rock as early as January 1991, his claim was barred. The court also ruled Nelson's notice of claim filed with the State failed to meet the "itemization" requirement of Wyoming law. In September 1993, the court also granted the project engineer's motion for summary judgment. No final judgment was entered at that time because there were unadjudicated claims remaining against the project designer. Nelson and Nodland discussed eventually appealing the court's dismissal of the State from the action when the judgment became final.

[¶ 9] Nelson settled with the project designer, and on May 10, 1994, the claim against the project designer was dismissed based on a stipulated motion. A final order dismissing all claims with prejudice was issued by the court on May 25, 1994. On August 1, 1994, Nodland wrote to Nelson's Wyoming attorney, stating "we have never received any notice of entry of judgment," and asking, "we would like to know when the time for appeal begins to run, and what the Wyoming rules mandate for the filing of an appeal." The Wyoming attorney responded on September 16, 1994, informing Nodland "Wyoming Rule of Appellate Procedure 2.01 requires that the filing of a Notice of Appeal be accomplished within fifteen (15) days following the entry of 'the judgment or final order appealed from ...,'" and "[t]hat time period would have run on June 10, 1994." Nodland did not attempt to appeal the court's final order.

[¶ 10] Nelson brought this legal malpractice action against Nodland in North Dakota district court in March 1997, alleging Nodland negligently represented him before the Wyoming courts in the construction contract case against the State of Wyoming. Nelson claimed Nodland negligently failed to appeal the adverse summary judgment ruling to the Wyoming Supreme Court, and negligently failed to make appropriate arguments before the Wyoming district court which would have either prevented a summary judgment dismissal or would have resulted in a reversal in an appeal to the Wyoming Supreme Court. Nelson asserted if he had received proper representation, he would have been able to successfully try his case to a Wyoming jury.

[¶ 11] Both parties moved for summary judgment. Nodland sought dismissal of the legal malpractice action, arguing the Wyoming district court's summary judgment ruling was proper under Wyoming law and would have been upheld on an appeal to the Wyoming Supreme Court even if additional arguments had been made by Nodland. Nelson sought summary judgment, arguing the Wyoming district court decision was incorrect under Wyoming law and would have been reversed on appeal to the Wyoming Supreme Court, resulting in a jury trial on the merits.

[¶ 12] The trial court granted summary judgment in favor of Nodland, concluding:

> The Wyoming Supreme Court would not have reversed the trial court's grant of summary judg[ ]ment because of two alternative reasons: 1) the Plaintiffs failed to follow the contractual procedure for giving notice of the changed subsurface conditions, and 2) the Plaintiffs failed to follow the statutory procedure for filing a claim against the State of Wyoming. Since the record shows that there is no genuine issue of material fact regarding those two alternative reasons, the Defendants are entitled to judgment as a matter of law, and sum-

mary judgment in their favor is therefore proper.

Nelson appealed.

## II

[¶ 13] Summary judgment under N.D.R.Civ.P. 56 is a procedural device for properly disposing of a lawsuit without trial if, after viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact or conflicting inferences which can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. *Jose v. Norwest Bank North Dakota, N.A.*, 1999 ND 175, ¶ 7, 599 N.W.2d 293.

[¶ 14] The elements of a legal malpractice action against an attorney for professional negligence are the existence of an attorney-client relationship, a duty by the attorney to the client, a breach of that duty by the attorney, and damages to the client proximately caused by the breach of that duty. *Richmond v. Nodland*, 501 N.W.2d 759, 761 (N.D.1993). When it is alleged that an attorney negligently failed to perform some act on behalf of the client, the plaintiff must allege and prove performance of the act would have benefitted the client. *Swanson v. Sheppard*, 445 N.W.2d 654, 658 (N.D.1989). In this context, the "case-within-a-case" doctrine applies to alleged negligently-conducted litigation and requires that, but for the attorney's alleged negligence, the litigation would have terminated in a result more favorable for the client. *Wastvedt v. Vaaler*, 430 N.W.2d 561, 567 (N.D.1988). In a case like this, where the underlying action was concluded by a summary judgment that was not appealed because of an attorney's alleged negligence in failing to perfect an appeal, "a legal malpractice claimant must prove two claims: first, the one that was lost, and also that his attorney's negligence caused that loss." *Bye v. Mack*, 519 N.W.2d 302, 305 (N.D.1994).

[¶ 15] This Court has said summary judgment is ordinarily inappropriate for legal malpractice actions, *Klem v. Greenwood*, 450 N.W.2d 738, 743 (N.D. 1990), particularly with respect to the issue of proximate cause. *See Bye*, 519 N.W.2d at 305; *Bjorgen v. Kinsey*, 466 N.W.2d 553, 558 (N.D.1991). Nevertheless, even though legal malpractice is to be determined by the rules that apply to professional negligence, this generalization is subject to the necessary qualification that the court must determine legal questions which underlie the ultimate decision. *Martinson Bros. v. Hjellum*, 359 N.W.2d 865, 872 (N.D.1985). Deciding the proximate cause issue in this case requires a determination of whether, assuming for purposes of argument Nodland was negligent in failing to perfect the appeal, the appeal would have been successful. We agree with the parties and the trial court that determining the merits and the probable outcome of an appeal presents a question of law for the court to decide, and is therefore amenable to summary judgment disposition.[1] *See, e.g., Charles Reinhart Co. v. Winiemko*, 444 Mich. 579, 513 N.W.2d 773, 786 (1994); *Hyduke v. Grant*, 351 N.W.2d 675, 677 (Minn.App.1984); 3 R. Mallen and J. Smith, *Legal Malpractice* § 29.41, at p. 771 (4th ed.1996), and cases collected therein.

[¶ 16] Nelson argues the trial court erred in: (1) failing to conclude Nodland should have argued, and the Wyoming district court should have ruled, the "Unforeseen Physical Conditions" provision of the contract rather than the "CHANGE OF CONTRACT PRICE" provision applied in this case; (2) failing to conclude the Wyoming court erred in refusing to find the State knew of Nelson's problems with rock and water in January 1991, and this knowledge constituted a waiver of any right to contend, or estopped the State from claiming, Nelson did not give timely notice of unforeseen physical conditions; and (3) failing to conclude the Wyoming court erred in holding Nelson's claim filed with the State was not an "itemized" statement required by Wyoming law.

A

[¶ 17] Nelson contends the trial court erred in not concluding the Wyoming district court applied the wrong provision of the construction contract to the parties' dispute, and if Nodland had argued the "Unforeseen Physical Conditions" provision applied, summary judgment would not have been entered or would have been reversed on appeal.

[¶ 18] The standard for reviewing summary judgments in Wyoming does not differ from the standard used in North Dakota. In *McKennan v. Newman*, 902 P.2d 1285, 1287 (Wyo.1995), the Wyoming Supreme Court said summary judgment is proper "only if there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law." The Court has said, "[t]he interpretation of an unambiguous contract is a question of law and, for that reason, summary judgment is appropriate with respect to disputes relating to unambiguous contracts." *40 North Corp. v. Morrell*, 964 P.2d 423, 426 (Wyo.1998). The Court has also noted in an analogous context, although entry of a summary judgment on the issue of when a statute of limitations commences to run is ordinarily inappropriate, if "uncontroverted facts exist that demonstrate with specificity the time when a reasonable per-

---

1. In *Bye v. Mack*, 519 N.W.2d 302, 304 (N.D. 1994), the trial court concluded, following a bench trial, that " '[h]ad the Defendants properly perfected the Plaintiff's appeal, however, a preponderance of the evidence failed to establish that the issues presented on appeal would have been sufficient to reverse the adverse summary judgments....' " This Court treated the trial court's conclusion as a "find- ing[ ] of fact to the extent [it] deal[t] with ... proximate cause ...," which was subject to the clearly erroneous standard of review under N.D.R.Civ.P. 52(a). *Bye*, 519 N.W.2d at 305. Insofar as *Bye* can be interpreted as suggesting the question whether an unperfected appeal would have been successful is for the trier of fact, we disapprove it.

son would have been placed on notice, we will resolve the question as a matter of law." *Murphy v. Housel & Housel,* 955 P.2d 880, 883 (Wyo.1998).

[¶ 19] Compliance with the terms of the Wyoming Governmental Claims Act is necessary to avoid a claim being barred by the doctrine of sovereign immunity. *Ruppenthal v. State,* 849 P.2d 1316, 1320 (Wyo.1993). Under the Wyoming Governmental Claims Act, the State has waived its immunity to suit "in actions based on a contract entered into by a governmental entity ... *except to the extent provided by the contract* if the contract was within the powers granted to the entity and was properly executed...." Wyo.Stat.Ann. § 1–39–104(a) (Michie 1999) (emphasis added). A claim against a governmental entity does not accrue until all contractual terms creating a condition precedent have been exhausted. *Weston County Hosp. v. Westates Const.,* 841 P.2d 841, 849 (Wyo. 1992). Nelson therefore had to comply with any conditions precedent in the construction contract before he could sue the State.

[¶ 20] There are two disputed provisions of the contract in this case. The first provision, titled "Unforeseen Physical Conditions," states:

> CONTRACTOR shall promptly notify OWNER and ENGINEER in writing, within 15 days, of any subsurface or latent physical conditions at the site differing materially from those indicated on the Surface or in the Contract Documents. ENGINEER will promptly investigate those conditions and advise OWNER in writing if further surveys or subsurface tests are necessary. Promptly thereafter, OWNER shall obtain the necessary additional surveys and tests and furnish copies to ENGINEER and CONTRACTOR. If ENGINEER finds that the results of such surveys or tests indicate that there are subsurface or latent physical conditions which differ materially from those intended in the Contract Documents, and

> which could not reasonably have been anticipated by CONTRACTOR, a Change Order shall be issued incorporating the necessary revisions. No claim shall be made by the CONTRACTOR where prompt notice of a changed condition has not been provided as required herein.

[¶ 21] The second provision, titled "CHANGE OF CONTRACT PRICE," states in relevant part:

> The Contract Price may only be changed by a Change Order. Any claim for an increase in the Contract Price shall be based on written notice delivered to OWNER and ENGINEER within 15 days of the occurrence of the event giving rise to the claim. Notice of the amount of the claim with detailed supporting data for costs allowed by this section shall be delivered within 20 days of such occurrence unless ENGINEER allows an additional period of time to ascertain accurate cost data. Any change in the Contract Price resulting from any such claim shall be incorporated in a Change Order.

The contract also set forth an "informal process" for resolving disputes or claims arising under the contract before legal action could be commenced.

[¶ 22] The purpose of a differing site conditions, or changed conditions clause, often found in government construction contracts, was explained in *Metropolitan Sewerage Com'n v. R.W. Const.,* 72 Wis.2d 365, 241 N.W.2d 371, 376 (1976):

> The changed-conditions clause is a contractual innovation designed for the mutual benefit of both the government and the contractor. The government benefits by the use of such a clause because the contractor no longer needs to add large contingency sums to his bid in order to cover the risk of encountering adverse subsurface conditions. The contractor benefits because he is awarded extra compensation if adverse subsurface conditions are encountered

which materially differ from those indicated in the contract. Thus, much of the gamble is taken out of underground construction. The government does not have to pay the contractor a windfall price when only normal conditions are encountered, and the contractor suffers no disaster when unanticipated conditions arise. Furthermore, both parties benefit by the existence of an informal machinery for resolving problems through negotiation rather than litigation.

*See also Shank–Artukovich v. United States*, 13 Cl.Ct. 346, 355 (1987); *Asphalt Roads & Materials v. Commissioner, DOT*, 257 Va. 452, 512 S.E.2d 804, 806–07 (1999); Annot., *Construction and effect of "changed conditions" clause in public works or construction contract with state or its subdivision*, 56 A.L.R.4th 1042, 1048 (1987). The purpose for the prompt written notice requirements found in both the changed conditions clause and the change of contract price provision is to permit the government's early investigation into the validity of the claim and the contractor's resulting costs so the government may retain control of the total contract price and weigh competing alternatives to excessive expenditures. *See, e.g., Johnson Const. v. Rugby Municipal Airport*, 492 N.W.2d 61, 63 (N.D.1992) (discussing change of contract price provision); *Clark–Fitzpatrick, Inc./Franki Foundation Co. v. Gill*, 652 A.2d 440, 447 (R.I.1994) (same); 3 S. Stein, *Construction Law* ¶ 15.03[1][c][ii], at p. 15–39 (1999) (discussing differing site conditions clause).

[¶ 23] In its motion for summary judgment, the State argued Nelson's claim was untimely under the "CHANGE OF CONTRACT PRICE" provision. In response, Nodland argued Nelson had no duty to report a changed condition until it affected the total cost of the project because of an addendum to the construction contract,[2] and if there was a duty, the State either waived or was estopped from relying on the notice requirement. The Wyoming district court did not mention the "Unforeseen Physical Conditions" provision of the contract, but held, under the "CHANGE OF CONTRACT PRICE" provision, Nelson had not given the State notice "within 15 days of the occurrence of the event giving rise to the claim" because the "undisputed evidence shows that rock was first encountered as early as January, and indeed the May 28, 1991 notice shows that the conditions which required the use of dozers and rippers for the next several months were known to Dan Nelson months before the May 28 notice." The North Dakota district court ruled Nelson's notice was untimely, under either the "CHANGE OF CONTRACT PRICE" provision or the "Unforeseen Physical Conditions" provision, because Nelson "undoubtedly knew, well before May 28, 1991, that both an event triggering a claim for a contract price increase and a subsurface condition differing materially from the surface conditions existed." Nelson contends which contract provision applies is significant because, while determining "the occurrence of the event giving rise to the claim" requires application of an objective test, determining "any subsurface or latent physical conditions at the site differing materially from those indicated on the Surface or in the Contract Documents"

2. The Wyoming district court did not address the addendum to the contract in its opinion granting summary judgment. The North Dakota district court addressed the addendum in its decision, but held the addendum only complemented the timely notice requirements of other sections of the contract, and even if it did not require timely notice, the addendum "clearly applied only to claims based on fuel increases." Nelson does not challenge the trial court's ruling concerning the contract addendum in this appeal. We further note at least one court has rejected the argument that "the occurrence of the event giving rise to the claim" under a change of contract price provision encompasses "an every day, ongoing series of incurred costs," and that notice given after completion of the project is sufficient because the total additional expenses could not be calculated until then. *Brady Contracting Co. v. West Manchester Tp.*, 97 Pa.Cmwlth. 31, 508 A.2d 1287, 1291 (1986).

requires application of a subjective test, and when Nelson subjectively made this determination is purely a question of fact for a jury to decide.

[¶ 24] We reject Nelson's argument. Nelson has not cited, nor have we found, any authority to support his assertion a subjective standard governs determinations made under the 15–day notice provision of the changed conditions clause. Rather, courts construing changed conditions clauses apply an objective, reasonable person standard, in which a court places "itself 'into the shoes of a "reasonable and prudent" contractor' [to] decide how such a contractor would act in appellant's situation." *P.J. Maffei Bldg. Wrecking v. United States*, 732 F.2d 913, 917 (Fed.Cir.1984) (quoting *H.N. Bailey & Associates v. United States*, 196 Ct.Cl. 156, 449 F.2d 387, 390 (1971). *See also, e.g., Spirit Leveling Contractors v. United States*, 19 Cl.Ct. 84, 94 (1989); *Mojave Enterprises v. United States*, 3 Cl.Ct. 353, 358 (1983); *Metropolitan Sewerage Com'n*, 241 N.W.2d at 379. We conclude the changed conditions clause must be interpreted from the perspective of what the contractor knew, or what a reasonable contractor should have known, under the circumstances.

[¶ 25] The Wyoming Supreme Court has held that government contractors must strictly adhere to the prompt written notice requirements under change of contract price provisions of construction contracts. *See Rissler & McMurry Co. v. Sheridan Area Water*, 929 P.2d 1228, 1233 (Wyo.1996); *Westates Const. Co. v. City of Cheyenne*, 775 P.2d 502, 505 (Wyo.1989). We have no reason to believe the Court would treat compliance with the prompt written notice requirements under changed conditions clauses any differently.

[¶ 26] The undisputed evidence in this case clearly shows Nelson did not give timely notice under either of the contract provisions. Nelson ran into problems with rock in January 1991. In his deposition, Nelson testified:

Q. (BY MR. SCOTT) Given the fact that you had been working the Tee spoils since early—since January, why was it not until early May that you came to the conclusion that it was a changed condition, the amount of rock and boulder?

A. Well, we kept thinking that we would get out of this rock, this whole thing wouldn't be rock. Because after all, this was advertised as a dirt job with a 90 percent compaction and a 12–inch lift spec in it.

Now, if you're going to put all this dirt in that hole in 12–inch lifts and it's full of rock, it's going to be awful hard to pack and awful hard to put a two-foot rock in a 12–inch lift. We kept thinking we'll work out of this rock.

Q. Maybe you just have, but tell me why you thought you were going to get out of the rock.

A. I didn't think the whole pile was going to be that way. After we got in there and discovered it was rock, I thought sooner or later, we'll run out of this rock.

Q. Why did you think that?

A. Well, I just said, because this is a dirt job. It's not a rock job, or it's supposed to be a dirt job. Nobody told us it was all rock.

[¶ 27] Nelson's May 28, 1991 letter to the State outlined that Nelson had incurred more than $182,000 in damages from the unanticipated subsurface conditions by the end of February 1991, and more than $400,000 in losses by the end of April 1991. The letter also indicated Nelson expected to encounter only 600 cubic yards of rock, but at the time the letter was written, he had actually encountered 120,000 cubic yards of rock, causing "excessive damage" to Nelson's equipment.

[¶ 28] We agree with the trial court that, as a matter of law, Nelson knew, or reasonably should have known, more than 15

days before May 28, 1991, that both an event triggering a claim for a contract price increase and a subsurface condition differing materially from the surface conditions existed. Nelson's failure to give timely written notice barred his subsequent lawsuit against the State.[3]

### B

[¶ 29] Nelson contends the trial court erred in failing to rule the Wyoming court incorrectly held the State did not waive and was not estopped from claiming the benefit of the 15–day written notice requirements under the contract. Nelson argues waiver and estoppel principles apply because the State had actual knowledge of Nelson's rock and water problems in January 1991 and even assisted him in preparing a draft claim form for the changed conditions, and because Nelson and the State went through mediation for almost one year without the State informing him until after the lawsuit was commenced that his failure to comply with the 15–day written notice requirements barred the claim. The Wyoming district court and the trial court in this case ruled waiver and estoppel principles did not apply as a matter of law.

[¶ 30] Successfully claiming waiver or estoppel against a government entity is not an easy accomplishment. *See* Annot., *Waiver of, or estoppel to assert, failure to give or defects in notice of claim against state or local political subdivision—modern status*, 64 A.L.R.5th 519 (1998), and cases collected therein. Wyoming juris-

prudence suggests Wyoming is no exception to this rule.

[¶ 31] Even if the State had actual knowledge of Nelson's claim, actual knowledge of a potential claim by the government does not in itself estop the government from raising the untimely filing of the claim as a defense, absent a showing "that the delay in filing was induced by [the government], or that [the government] misled [the claimant] as to the need to file a claim." *Cranston v. Weston County Weed & Pest Bd.*, 826 P.2d 251, 256–57 (Wyo.1992). In *Dehnert v. Arrow Sprinklers, Inc.*, 705 P.2d 846, 851 (Wyo. 1985), the Wyoming Supreme Court further ruled neither the verbal approval nor the subsequent conditional written approval of substituted equipment given by the government's architect to a contractor could "be construed as a waiver of the additional contractual requirement that the contractor obtain a change order for the substitution of major equipment." The State's actual knowledge and assistance in drafting a claim form, without more, do not establish waiver or estoppel.

[¶ 32] Moreover, under Wyoming law active settlement negotiations with the government are insufficient as a matter of law to estop the government from defending on the basis of the claimant's failure to timely file a claim. *Duran v. Board of County Com'rs*, 787 P.2d 971, 974–75 (Wyo.1990). The Wyoming Supreme Court has also ruled even a request by a city attorney to delay filing a claim against the city was insufficient as a mat-

---

**3.** Nelson relies on *Allied Contractors, Inc. v. United States*, 149 Ct.Cl. 671, 277 F.2d 464 (1960), for the proposition that Nelson's May 28, 1991 letter to the State should constitute timely written notice of additional damages from the changed conditions from May 20, 1991 until the project was completed in late October 1991. In *Allied Contractors, Inc.*, 277 F.2d at 466, the defendant contended the plaintiff failed to give timely written notice of a changed condition, but the court concluded the plaintiff "had filed a written notice originally and we do not construe that it must file an additional claim for excess cost every time

a new rock was discovered." Contrary to Nelson's argument, *Allied Contractors, Inc.* does not hold that an untimely original written notice becomes "timely" for purposes of assessing additional damages for subsurface conditions incurred after the untimely notice was given. Nelson was required to give written notice within 15 days of encountering changed conditions. Nelson's written notice was just as untimely for damages incurred from May through October 1991 as it was untimely for damages incurred from January through May 1991.

ter of law to establish estoppel, at least where the city attorney "made neither a promise of settlement nor a promise not to assert the statute of limitations as an affirmative defense." *Archuleta v. City of Rawlins*, 942 P.2d 404, 406–07 (Wyo.1997). Mediation efforts between the State and Nelson are likewise insufficient to establish waiver or estoppel.

[¶ 33] The State's failure to raise the 15–day notice requirements until litigation began is also insufficient to establish waiver or estoppel. Even if governmental immunity has not been pleaded by the government as an affirmative defense, immunity may nevertheless be raised by the government in a motion for summary judgment unless "the adverse party is prejudiced by the moving party's delay in raising the defense." *Pickle v. Board of County Com'rs*, 764 P.2d 262, 264 (Wyo. 1988). Nelson has alleged no prejudice resulting from the delay.

[¶ 34] We conclude the trial court correctly ruled as a matter of law that the Wyoming court did not err in rejecting Nelson's waiver and estoppel arguments.[4]

## C

[¶ 35] Nelson argues the trial court erred in failing to conclude the Wyoming court incorrectly ruled Nelson's claim filed with the State was not an "itemized" statement required by Wyoming law.

[¶ 36] Article 16, Section 7 of the Wyoming Constitution declares that "no bills, claims, accounts or demands against the state ... shall be ... allowed or paid until a full itemized statement in writing, certified to under penalty of perjury, shall be filed with the officer or officers whose duty

it may be to audit the same." The claims procedures of the Wyoming Governmental Claims Act apply to contractual claims against governmental entities. *See* Wyo. Stat.Ann. § 1–39–104(a) (Michie 1999). The claims procedure is found in Wyo.Stat. Ann. § 1–39–113 (Michie 1999), which provides in relevant part:

(a) No action shall be brought under this act against a governmental entity unless the claim upon which the action is based is presented to the entity as an itemized statement in writing within two (2) years of the date of the alleged act, error or omission, ...

. . . .

(b) The claim shall state:

(i) The time, place and circumstances of the alleged loss or injury including the name of the public employee involved, if known;

(ii) The name, address and residence of the claimant and his representative or attorney, if any; and

(iii) The amount of compensation or other relief demanded.

[¶ 37] The Wyoming Supreme Court has stressed that strict compliance with the claims procedure requirements is a jurisdictional prerequisite to a suit against the State. In *Board of Trustees of the University of Wyoming v. Bell*, 662 P.2d 410, 415 (Wyo.1983), the Court held that a district court has no jurisdiction over an action against the State "if the complaint fails to allege the filing of the claim pursuant to statute." The Court expanded this rule in *Amrein v. Wyoming Livestock Bd.*, 851 P.2d 769, 771 (Wyo. 1993), holding that, "in order to invoke the

---

4. Nelson relies on several cases from other jurisdictions to support his waiver and estoppel arguments. *See Schnip Bldg. Co. v. United States*, 227 Ct.Cl. 148, 645 F.2d 950 (1981); *Metropolitan Paving Co. v. City of Aurora, Colorado*, 449 F.2d 177 (10th Cir.1971); *Frederick Snare Corp. v. Maine–New Hampshire I.B.A.*, 41 F.Supp. 638 (D.N.H.1941); *Kenny Const. Co. v. Metropolitan Sanitary Dist. of Greater Chicago*, 52 Ill.2d 187, 288 N.E.2d 1 (1971); *Bignold v. King County*, 65 Wash.2d 817, 399 P.2d 611 (1965); *Metropolitan Sewerage Com'n*, 241 N.W.2d at 371. These decisions are not helpful in resolving the issue in this case because they are either distinguishable on their facts or conflict with Wyoming decisional law regarding the effect of waiver and estoppel principles on written notice of claim requirements.

jurisdiction of the district court, such an allegation must encompass a statement of the date the claim was filed...." Noting "within a context of governmental claims, formality has risen to the status of ruling principle," the Wyoming district court in this case ruled Nelson's claim "falls far short of meeting the itemization requirement." The North Dakota district court said Nelson's claim "does not have a high degree of itemization," and ruled "the Wyoming Supreme Court would agree and uphold the finding of lack of jurisdiction because of failure to meet the requirements" of the claims procedure statute.

[¶ 38] Nelson's claim is six pages long, but the first four pages resemble a complaint alleging the theories under which the State should be held liable. The claim further states:

4. Nelson is demanding from the State compensation · for the following costs, damages and injuries:

(a) Nelson demands an adjustment pursuant to the Contract with the State accounting for expenses and damages incurred as a result of performing the Contract in light of the following unforeseen conditions:

(i) As a result of the excessive boulders in the TEE Spoils and required use of water in the TEE Spoils material above the water recovery level, Nelson was damaged in the sum of nine hundred and forty-two thousand seven hundred and nineteen dollars ($942,719.00).

(ii) As a result of excessive water handling in B–2 pit, Nelson incurred damages in the amount of sixty-three thousand six hundred and ninety dollars ($63,690.00).

(iii) As a result of ripping rock in UC cut, Nelson incurred damages in the sum of four hundred and forty-four thousand seven hundred and sixty-seven dollars ($444,767.00).

(iv) Nelson seeks a total adjusted claim in the sum of one million four hundred and fifty-one thousand one hundred and seventy-six dollars ($1,451,176.00).

(b) Nelson further demands compensation for costs, damages, and injury for being forced out of business due to losing its financing and bonding capacity resulting from the substantial expenses incurred by Nelson on Project 16E–2–A. The exact amount of these damages and costs is unknown at this time.

■■■ [¶ 39] The Wyoming Supreme Court has not defined what constitutes a sufficient "itemized statement in writing" for purposes of the Wyoming Governmental Claims Act. Courts construing statutory itemization requirements have reached varying results, some holding itemization is satisfied if "[t]he claim as filed fully informed the [government] as to the nature and amount of the claim," *Trustees of University Co–Op. Co. v. City of Madison*, 233 Wis. 100, 288 N.W. 742, 747 (1939), and others holding itemization requires "the dates on which the material was delivered, or on which the labor was performed ... [and] the various items or quantities of material actually delivered." *Trinity Universal Ins. Co. v. Woitaske*, 148 S.W.2d 235, 237 (Tex.Civ.App.1941). *See also Ask, Inc. v. Wegerle*, 286 N.W.2d 290, 293–94 (N.D.1979). Given the Wyoming Supreme Court's strict construction of the claims procedure statute, we believe the Court would require a higher degree of itemization than provided by Nelson's claim. We therefore conclude Nelson's claim was not itemized as required by Wyoming law.

[¶ 40] The trial court did not err in concluding the Wyoming district court properly held Nelson's claim against the State did not meet the itemization requirements of Wyoming law and, therefore, the Wyoming court did not acquire jurisdiction over Nelson's action against the State.

### III

[¶ 41] Because the Wyoming district court's summary judgment dismissal of

Nelson's action was correct under Wyoming law and would not have been reversed on appeal to the Wyoming Supreme Court even if arguments not made by Nodland had been presented, we conclude the trial court correctly ruled Nodland's alleged negligent act was not, as a matter of law, the proximate cause of any of Nelson's damages.

[¶ 42] The summary judgment is affirmed.

[¶ 43] GERALD W. VANDE WALLE, C.J., DALE SANDSTROM, WILLIAM A. NEUMANN, JJ., NORMAN J. BACKES, D.J., concur.

[¶ 44] NORMAN J. BACKES, D.J., sitting in place of MARING, J., disqualified.